MARIETTA LINDSLEY, Respondent, *v.* CARRIE STERN, Appellant.

First Department, December 15, 1922.

**Negligence — action by invitee to recover for personal injuries — plaintiff suffered injury when she fell down embankment at boundary line of defendant's lot in night time — embankment unguarded and unlighted — plaintiff had knowledge of embankment — defendant is not liable.**

The owner of an apartment house is not liable for injuries suffered by an invitee on the premises who, while leaving the apartment house in the night time by way of the back entrance and yard, fell down an embankment at the boundary line between the property of the owner of the apartment house and the adjoining property, though the embankment was unguarded and the yard unlighted, where it appears that the invitee had full knowledge of the existence of the embankment.

DOWLING, J., dissents.

APPEAL by the defendant, Carrie Stern, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of March, 1922, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Bertrand L. Pettigrew* [*Walter L. Glenney* of counsel], for the appellant.

*House, Grossman & Vorhaus* [*David Vorhaus* of counsel], for the respondent.

PAGE, J.:

The action was to recover damages for personal injuries sustained by reason of the alleged negligence of the defendant. There was very little conflict in the evidence, and on this appeal the plaintiff's version of the contested facts will be accepted as settled by the verdict of the jury.

The plaintiff, a woman seventy years of age, residing in Sullivan county, State of New York, came to the premises of the defendant in the borough of The Bronx with the intention of spending the winter with her son and daughter-in-law, who were employed as janitors on the premises. The living apartments of the janitor were situated in the rear of the apartment house on the ground floor. The janitor was required to use the rear entrance and was not permitted to use the front entrance to the building. On the evening of December 27, 1918, at half-past six in the evening, the plaintiff, intending to go to a drug store, left the janitor's apartment. Turning to the right, she passed through a passage-

way into an open court at the side of the building. She turned to the right, and at the corner of the building again turned to the right in the rear yard of the building, feeling her way in the darkness by, from time to time, touching the rear wall. It was her intention to turn to the right into a covered passageway on the other side of the building and proceed through this passageway to an open court and from there through another passageway, in line with the first, into the street. This route of entrance to the building was used by trades people in making deliveries, and as an entrance to the janitor's apartment, and was also used by tenants, who stored baby carriages in rooms provided adjoining the janitor's apartment. The side wall of the building was twenty inches thick. The yard of the adjoining premises was fifteen inches lower than the yard of defendant's premises. This made a step down, which was not guarded. The plaintiff missed the entrance to the passageway, and when she reached the side wall of the building she mistook the corner of the building for the entrance and started to turn into it, but fell to the yard of the adjoining premises and sustained a fracture of the leg. There were wires for an electric light in the ceiling of the passageway nine feet from the entrance, but there had never been an electric bulb attached. It is not contended that there was any statutory duty upon the defendant to light the rear yard or the passageway. The contention is that, where there was as slight a difference between the yards of adjoining premises as in this instance, it was customary and usual to provide merely a step, and there was no rule, by statute or by the building or tenement house department regulations, that required it to be guarded.

The plaintiff had been on these premises for four or five weeks, and was thoroughly familiar with the entrance, and knew of the existence of this step. She testified, however, that this was the first time that she had used it after dark when she was alone; that on all other occasions when she had used it in the darkness she had been accompanied and guided by some member of the family.

The learned justice, in response to the request of the defendant's counsel to charge " that there is no requirement in law to furnish an artificial light as to the rear yard in the premises in question," said: " I know of no statutory duty, gentlemen of the jury, that requires an owner of an apartment house of this character to keep an outside light such as there has been mentioned here in this case. But, where there is no statutory duty, there is yet what we say in the law is a common-law liability, and that is based upon negligence, and then you go right back to the main question that I put to you: Was this defendant solely responsible for the

happening of this accident? " The court also refused to charge upon the request of defendant's counsel " that there was no duty on the part of the defendant to furnish a light to apprise the plaintiff of this declivity in question, as a matter of law." Further the court declined to charge that " there was no duty in law to guard the difference in level between this and the adjacent yard, under the facts in this case, by barriers." In response to the defendant's request, " I ask your Honor to charge the jury that there was no duty in law to erect a barrier between this court yard and the adjoining yard, as a matter of law," the court said: " I charge that, because the building superintendent and the inspector so testified."

The case was, therefore, left to the jury with a charge, which clearly expressed the theory of the complaint, that, although there was no statutory requirement that the owner of the premises must either guard or light the premises at this step, yet there was a common-law duty to so do, the failure to perform which would render the defendant liable for the injuries to the plaintiff.

The facts that the step was there and that there was no railing to guard it and that there was no provision for artificial light at night, were well known to the plaintiff. The duty that the owner owes to an invitee is to guard the one invited from dangers known to the owner, but not to the invitee. The owner is not required to reconstruct or alter his premises to remove known or obvious dangers. There is no common-law obligation on the landlord to provide artificial light for any portion of the premises. (*Brugher* v. *Buchtenkirch*, 167 N. Y. 153; *Hilsenbeck* v. *Guhring*, 131 id. 674; *Kunder* v. *Purchase Holding Co.*, 188 App. Div. 94, 96.) If there had been such a common-law duty, it would not have been necessary to impose upon the owner of tenements the obligation, by statute, to light the hallway on certain floors at specified hours. A person who goes into a dark place knowing that no light is provided, must provide his own means of illumination or assume the risk of a safe passage.

The judgment and order should, therefore, be reversed, with costs to appellant, and judgment ordered for the defendant dismissing the complaint upon the merits, with costs.

CLARKE, P. J., SMITH and GREENBAUM, JJ., concur; DOWLING, J., dissents.

Judgment and order reversed, with costs to appellant, and judgment ordered for the defendant dismissing the complaint upon the merits, with costs.