JOSEPH SYMONSKI, RESPONDENT, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, APPELLANT.

Submitited May 15, 1925—Decided January 20, 1926.

Where an employe of defendant railroad was walking upon its railroad tracks on his way from his home to its railroad station, at Bayonne, for the purpose of taking one of its passenger trains, upon which he was allowed to ride free of charge, to convey him to the defendant's roundhouse, at Elizabehport, at which place his employment was to clean fires from, and to build fires in, engines engaged in interstate commerce, and while so walking he was injured by an engine of an interstate train, and when it further appeared that the plaintiff's pay did not begin until he reached the round house and actually punched the time card, and that the company exercised no control over its employes as to their places of residence or in what manner they should get to their place of employment—*Held,* that the facts being without dispute, a court question was presented, whether the plaintiff at the time of his injury was engaged in interstate commerce, and the motion for a direction of a verdict for the defendant should have prevailed.

On appeal from the Hudson County Court of Common Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For the appellant, *DeVoe Tomlinson, George Holmes* and *Edwin F. Smith*.

For the respondent, *Edward A. Markley* and *William George*.

The opinion of the court was delivered by

KALISCH, J. The plaintiff recovered a verdict in the Hudson County Court of Common Pleas against the defendant company for the sum of $29,000, in an action brought by him under the Federal Employers' Liability act, to recover damages sustained by him through the negligence of the defendant's servants, on the 8th day of March, 1924, while he and the defendant company were engaged in interstate commerce. From the judgment entered upon the verdict the defendant takes this appeal.

The amended complaint contains two counts. The first count alleged "that this action is brought under and by virtue of an act of congress of the United States entitled "An act relating to the liability of common carriers by railroads to their employes in certain cases." This paragraph is repeated in the second count, except that it is not expressly alleged that the defendant company was engaged or the plaintiff employed in interstate commerce. The trial judge in his instructions to the jury, after stating that the action was brought under "An act of congress of the United States," first read that provision of the statute which relates to and governs actions brought against common carriers engaged in interstate commerce by employes, who have suffered injury while engaged in interstate employment, "resulting in whole or in part from the negligence of any of the officers, agents or employes of such carrier," &c., and

then further charged "that if at the time of the accident the plaintiff was engaged in work which was a part of the interstate commerce in which the defendant was engaged, or work that was so closely connected with interstate commerce as practically to be a part of it, or work which had for its immediate purpose the furthering of the conduct of interstate commerce, then both the defendant and plaintiff would be engaged in interstate commerce, and the provisions of the Federal Employment act would apply to this case."

We have no fault to find with this statement of the law, but only as to the application made of it by the trial judge to the facts of the case. There are thirty-five grounds of appeal presented for reversal of the judgment, but as we are met at the threshhold of the case with the fundamental question raised by the defendant's motion (denied by the court) for a direction of a verdict in defendant's favor, upon the ground that at the time of the plaintiff's mishap he was not engaged in interstate commerce, we need go no farther than to determine, from a consideration of the facts of the case, whether there was any testimony which warranted the trial judge to leave to the decision of the jury the question whether or not the plaintiff at the time of the accident was engaged in interstate commerce, for, if he was not so engaged, he was not entitled to succeed under the Federal Employers' Liability act.

The solution of this inquiry necessitates a statement of the facts, which, briefly, are these: The accident happened on March 8th, 1924, while the plaintiff, an employe of the defendant company, was walking upon its railroad tracks on his way to its railroad station, at Bayonne, for the purpose of taking one of its pasenger trains to convey him to the defendant's round house, at Elizabethport, at which place his employment was to clean fires from and to build fires in engines engaged in interstate commerce. His hours were from three o'clock P. M. until eleven o'clock P. M. His pay did not begin until he reached the shop and actually punched the time card. He resided on Prospect street, between Twenty-third and Twenty-fourth streets, in Bayonne, about

a block and a half from the defendant's railroad station on Twenty-second street, and about four miles from its round house at Elizabethport. The company maintains a passenger station on either side of the tracks, one for eastbound and the other for westbound passengers. These stations are reached by flights of stairs leading from Twenty-second street. On the day of the accident the plaintiff left his home about two-fifteen o'clock in the afternoon to go to his place of employment, but, instead of going by way of the stairs, provided by the defendant company, to reach its passenger station, he, according to his own story, followed his usual course to reach the station by cutting across lots and thus got upon the railroad tracks, and then walked along the tracks, and when within about two hundred feet of the station he was struck by the engine of an interstate freight train, of the approach of which he had no warning, and was so seriously injured that his right foot at the ankle and his left leg at the knee had to be amputated. There was proof that the plaintiff and other employes had taken the route he took to reach the station, and that this was a common practice covering a period of three or four years. The plaintiff was entitled to take any one of the defendant's passenger trains from Bayonne, stopping at Elizabethport, without payment of fare. There was no proof or intimation that the defendant company ever exercised any control over any of its employes as to their place of residence. In the absence of proof to the contrary, it will be presumed that the choice of residence was left to them. While it is true that the defendant company permitted its employes to be conveyed to and from its shops at Elizabethport by its trains without payment of fare, we think this circumstance is of no vital importance, since it does not appear that the defendant exercised any control over the plaintiff's choice of place of residence, or that the defendant undertook to control or direct the plaintiff as to the means he should use to reach his place of employment. The circumstance that he was allowed to ride, without payment of fare, to and from Elizabethport, is of no more significance than if he had been fur-

nished by his employer with the money to pay for his daily trips to and from his work.

In support of the plaintiff's right to maintain his action under the Federal Employers' Liability act, it is argued that, notwithstanding the fact that he was not injured while he was on the defendant's premises in the immediate vicinity of the place where he was employed, nevertheless, since he was on the defendant's premises when he received his injury, and was walking along the defendant's right of way with the purpose to take a train, upon its arrival, at the company's station to be conveyed to his place of employment, he was in legal theory engaged in interstate commerce. We are unable to find sanction of any such theory either in the federal or state decisions, to which reference has been made in the brief of counsel of plaintiff. The failure to find judicial confirmation of any such proposition is no cause for wonderment, if we pause to consider what an expansive territory would become embraced as a part of the premises of the plaintiff's employment.

To illustrate the plaintiff's counsel's theory, let us take the case of an employe of the defendant company, residing in Bound Brook or Trenton, who, in going to his work, selects the company's right of way to reach the station to board one of the company's trains, or upon reaching the station in safety he waits for the arrival of the train, and while doing either of those things he is injured by one of the company's interstate trains; thus, we have a situation of an employe being upon his employer's premises, on his way to his fixed place of employment, a distance of forty or fifty miles away, to perform, upon his arrival there, interstate commerce work, nevertheless, according to the plaintiff's counsel's theory, the employe, so soon as he sets his foot upon his employer's premises, for the purpose of going to his work, he is to be considered to have entered upon the duties of his employment, regardless of the remoteness of the place where he received his injury from the place of his employment, and irrespective of whether or not the accident occurred on the employer's premises within the vicinity of the plaintiff's

place of employment, or whether or not he was directed by the master, either expressly or impliedly, to take the route that he took at the time of his injury.

The federal cases lend no support to such a theory; in *North Carolina Railroad Co.* v. *Zachary*, 232 *U. S.* 249, the plaintiff's decedent, a locomotive fireman, after having prepared his engine for starting on a trip, left his engine to go to his house across certain tracks that intervened between the engine and his boarding house a short distance away, when he was struck by another engine, the view of which was obstructed, the court said: "Assuming [what is not clear] that the evidence fairly tended to indicate the boarding house as his destination, it, nevertheless, also appears that the deceased was shortly to depart upon his run, having just prepared his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck."

In *Erie Railroad Co.* v. *Winfield*, 244 *U. S.* 170, which was a case where the employe while leaving the railroad premises at the end of his day's work, but had not entirely cleared the premises, was struck by a switch engine, inflicting a fatal injury, the Supreme Court said: "In leaving the carrier's yard at the close of his day's work, the deceased was but discharging a duty of his employment. See *North Carolina Railroad Co.* v. *Zachary*, 232 *Id.* 248, 260. Like his trip through the yard to his engine in the morning, it was a necessary incident to his day's work and partook of the character of that work as a whole, for it was no more an incident of one part than another. His day's work was in both interstate and intrastate commerce, and so, when he was leaving the yard at the time of the injury, his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance."

By parity of reasoning the same rule would apply to a workman who was injured while on his way to commence his daily work. It is to be observed that in the cases cited the

right of a recovery was sustained upon the express ground that the injury to the workman occurred while he was within the ambit of his employment, and what he was doing was a necessary incident of his day's work. It is undisputed that the general work of the plaintiff's decedent in the instant case was that of interstate commerce, and the legal problem presented is whether at the time of his injury he was doing an act which was a necessary incident of his day's work, namely, in walking along the defendant's right of way, four miles from the place where his work actually began. In the absence of any testimony that the plaintiff was directed by the defendant to take the route that he did to reach the defendant's station, or that the defendant exercised any control over his movements, and in view of the further fact that the company had provided a safe means of access to its stations for the general use of its intending passengers, of which the plaintiff was one, it cannot be logically maintained that his election to walk along the defendant's right of way was a necessary incident of his day's work and partook of its character as a whole. To adopt a contrary view would subject the defendant to liability in case of accident, as a result of the capricious act of its servant in selecting the most perilous route to the place of his employment, without regard to its remoteness from the starting point, so long as he maintained a foothold upon the defendant's premises, at the time of his injury. The manifest vicious tendency of such doctrine is self-condemnatory.

It is strenuously urged by the plaintiff's counsel that the facts of the instant case cannot be distinguished in application of the legal principle from those facts which were present in *Lamphere* v. *Oregon Railroad and Navigation Co.,* 196 *Fed. Rep.* 336, where it was held that the plaintiff's decedent was entitled to recover under the following circumstances: The plaintiff's decedent was directed and ordered by the defendant to go from the town where he resided to the railroad station and procure transportation there by a certain train, due at seven forty-five P. M., to be conveyed by it to Tekoa, Oregon. His orders were to relieve an engine

crew which had been working overtime, and to move the train then engaged in interstate commerce. He went to the station as directed, and, upon reaching the crossing in the yards of the company where two cars were cut, he continued his course across between the two cars, which were suddenly closed, and by reason of which he was fatally injured. The court said: "The deceased when he was killed was not only on his way to work for his employer, but he was proceeding under the direct and peremptory command of the railroad company to do a designated specific act in the service of the company, to wit, to move a certain train then engaged in interstate commerce. He was on the premises in the discharge of his duty when he met his death, and the train which struck him and caused his death was engaged in interstate commerce and belonged to the same railroad company."

Assuming that this case was correctly decided, and that the essential facts are accurately stated, the dissimilarity between the facts upon which the excerpt from the opinion was predicated from the facts of the case *sub judice* is too conspicuously apparent to need comment. This being the case, it leads, however, to the pertinent observation that while it is true that in the cited case the decedent met his injury upon his employer's premises, far away from the place where he was to take charge of the interstate train, he was there at the direction and peremptory command of his employer, and, hence, his interstate employment began when he reached his employer's premises, and started in obedience of its explicit direction and command to fulfill the duty of the employment imposed upon him, by going to the train which he was directed by his employer to take. But it is to be observed that the fact that the employe met his injury upon his employer's premises, far distant from the place of his general interstate employment, is not of itself determinative one way or the other, on the question whether the employe at the time of his injury was engaged in interstate commerce, but is simply a factor to be considered with other facts and circumstances in the case, as is aptly illustrated by the facts and decision in the Oregon case above cited.

Upon this branch of the case, the facts being without dispute, a court question was presented, whether the plaintiff at the time of his injury was engaged in interstate commerce. We think he was not so engaged, and that, therefore, the motion for a direction of a verdict for the defendant made by its counsel, which motion was denied, should have prevailed.

For this error judgment must be reversed.

Judgment is reversed.