ANNE ROSE SCHWARTZ, as Administratrix, etc., of FRANK V. SCHWARTZ, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24089.)

Court of Claims, January 8, 1937.

*Mackrell & Ranney*, for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Joseph Delaney, Assistant Attorney-General*, of counsel], for the defendant.

RYAN, J. The negligence of the State of New York has been determined by this court in two previous claims. Awards therein were made, paid, and no appeal taken. (*Anderson* v. *State*, Claim No. 23785; *Albany Yellow Cab Co., Inc.*, v. *State*, Claim No. 23786.)

Two questions remain. The answer to the first is that we find claimant's intestate free from contributory negligence.

The second question is: Did the injuries to and death of claimant's intestate arise out of and in the course of his employment?

Schwartz had ceased work for the day. After the lapse of about fifty minutes he had called a taxicab of his own volition and at his own intended expense to transport him to his home. He made his election of one of two means of exit from the terminal.

After careful study of the authorities, including those cited in briefs of counsel and others, we determine that the question must be answered in the negative. (See *Matter of Kowalek* v. *N. Y. Cons. R. R. Co.*, 229 N. Y. 489; *Symonski* v. *Central R. R. Co. of N. J.*, 102 N. J. L. 271; 131 A. 628; *Aldredge* v. *Baltimore & Ohio Ry. Co.*, 20 F. [2d] 655.) There are numerous other cases which might be cited. We think that certain authorities referred to by the Attorney-General are clearly distinguishable as is *Matter of Broderick* v. *Colon & Co.* (255 N. Y. 609.)

It follows that the remedy under the Workmen's Compensation Law is not exclusive, that claimant is justified in maintaining this action and is entitled to an award herein.

BARRETT, P. J., concurs; MURPHY, J., dissents, with opinion.

MURPHY, J. (dissenting).* Claimant's decedent came to his death by drowning in the Hudson river at or off the State Barge Canal Terminal some distance north of North Ferry street in the city of Albany on March 6, 1934.

On that date, and from July in 1926, the deceased had been employed by the State at the terminal during the navigation season, April fifteenth to December fifteenth, as a craneman. For some three years before the date of his death he had been employed by the State during the period December fifteenth to April fifteenth as a watchman at the terminal, and on the day of his death he was so employed.

The evidence is that on March 6, 1934, the deceased worked at the terminal, that he finished his work about six o'clock, some time after six o'clock; that he then went to the Terminal Warehouse Building (some part of which apparently was provided for the employees), changed his clothes, washed up a little bit, sat down awhile visiting with a William McCurdy, a fellow watchman, and about six-fifty made a telephone call for a taxicab, intending to use it to convey him to his home. The taxicab arrived at the building on the terminal some eight or ten minutes after the telephone call and received the deceased as a passenger.

The taxicab had come upon the terminal from North Ferry street, and the chauffeur, after the deceased had entered the cab, was about to leave the terminal by way of North Ferry street, the way he had come in; the deceased did not want to go that way; he wanted to go along the dock; he said it was shorter, and the chauffeur proceeded northerly along the dock.

Northerly of where the chauffeur had received the deceased there was a stiff leg derrick or crane, and at this place, being about

---

* Dissenting opinion was rendered Jan. 29, 1937.

268 feet from the northerly end of the terminal dock, the chauffeur, addressing the deceased, said, " Straight ahead?" and the deceased said, " Yes." The chauffeur continued straight ahead, passed over the terminal wall and into the river.

On its way from where the deceased took the cab, the cab was driven in second gear at the rate of about ten miles an hour, its lights were lighted and its windshield wiper was working. A moist, heavy snow was falling, the roadway on the terminal was wet and muddy, there were no lights on the terminal except those at the terminal warehouse distant some 778 feet southerly from the place where the taxicab went into the river, and there were no lights, barricades or guards at the place where the taxicab went into the river or in the vicinity of the place.

The terminal roadway was commonly used for automobile travel north and south.

The chauffeur was wholly unacquainted in the location; he had never before been at or on the terminal.

On March 5, 1934, between four and five o'clock, the river began to break; the ice and water rose, and it came two feet or deeper on top of the dock; there was a freshet in the late afternoon and night of the fifth; it receded some time early in the morning of the sixth; ice, mud and pieces of logs were all over the terminal, and the deceased worked on the sixth pushing the logs and ice from the roadway into the river.

Upon these facts, the claimant charges responsibility upon the State for the death of her decedent and asks damages accordingly.

The following questions are before us for consideration:

I. The negligence of the State;

II. The contributory negligence of the deceased;

III. The decedent, having been in the employ of the State at the time of his death, the question as to whether or not his death arose out of and in the course of his employment.

The question of liability on the part of the State can only be decided upon a consideration of the duty that the State owed the deceased and to those similarly situated or standing in like relation. If the State failed in a duty of protection that it owed the deceased, and from such failure of duty the deceased's death resulted, then unquestionably the State is liable and the claimant should have an award.

The specific charge of negligence made by the claimant is the failure of the State to provide lights, guards, barriers, barricades or some such like thing at the northerly end of the terminal that might give notice and warning that there the terminal ended.

On the question of the State's negligence, therefore, the specific question is, did the State owe such a duty to the deceased and to others standing in like relation and was it incumbent upon the part of the State in the exercise of ordinary care to provide and erect some kind of sign, guard, barrier or the like for the protection of those whom it employed on the terminal.

The statement that the negligence of the State has been determined by this court in two previous claims, referring to *Anderson* v. *State* and *Yellow Cab Co.* v. *State*, should not be permitted to stand. I recognize no parallel between this case and the cases referred to, nor is there any.

The rule of law applicable to the two cases previously decided is sharply distinctly different from the rule that should be applied in this case.

In the prior cases we had before us strangers to the terminal, totally unacquainted with its physical condition. In fact, Anderson, the chauffeur, testified in his own case that he had never before been on the terminal. The duty that the State would owe him would be entirely different as a matter of law from the duty that it would owe one employed by it in work on the terminal.

This different measure of duty on the part of the State was accordingly applied, and by such measure the State was found negligent and the claimants succeeded. In those cases it might safely have been said that the terminal in the condition that was described, the water in the river having risen so that there was no marking the line between the wall and the water, that the State was then negligent in not closing the terminal to all those whose employment did not require or call them there.

The deceased had been employed on the terminal from July, 1926; for the last three years of his life, in the period in each of those three years from December to April, he was employed on the terminal as a watchman, and on the day of his death he was so employed. His long service and the nature of his employment, particularly his employment as a watchman, would suggest complete familiarity with the terminal and its physical condition. Further, on the very day of his death he had been employed cleaning the terminal of ice and foreign material that had been deposited on it by the flood. It must be assumed that he knew where the terminal ended at the north and that no lights or guards were erected there.

I do not think it can properly be found that the State was under obligation in the exercise of ordinary care to furnish lights beyond those that it did furnish, or guards, barriers or the like for the protection of those employed by it on the terminal.

The rule of duty and ordinary care is a flexible rule subject to change by relation, circumstance and many other influences. (*Lindsley* v. *Stern*, 203 App. Div. 615; *Flood* v. *Western Union Co.*, 131 N. Y. 603; *Kennedy* v. *Friederich*, 168 id. 379; *McLean* v. *Studebaker Bros. Co.*, 221 id. 475; *Kafline* v. *Brooklyn Eastern District Terminal Co.*, 228 id. 521; *Dougherty* v. *Pratt Institute*, 244 id. 111.)

Treating the question of contributory negligence, all that has been said relative to the employment of the deceased and his familiarity with the physical conditions at the terminal may be repeated. Then, further, when consideration is given to the fact that leaving by taxicab was the deceased's own decision, that the chauffeur was of his own selection, that the course taken was directed by him, the conclusion is compelled that the deceased was guilty of contributory negligence.

Within the settled law of this State it would appear that the deceased's death arose out of and in the course of his employment. There can be no question about the employment of the deceased or the place of his employment or that he met his death within the precincts of the place of his employment. The only question open may be that arising from the time that elapsed between the time that he actually ceased work and the time that he came to his death.

Dealing with this element, it appears that he finished his work about six o'clock, some time after six o'clock; that he went then to the Terminal Warehouse Building, washed up a little bit, changed his clothes, sat down awhile visiting with his fellow watchman, and about six-fifty called a cab to take him home. All of this conduct is normal and made peculiarly so when the weather conditions of the night are considered, and, therefore, it cannot be correctly said that he was not acting and leaving his place of employment with reasonable dispatch. There is perfect continuity in his conduct, there is no leaving the place and returning, there is no breaking in the relation of his employment that would deprive him of his right to safe ingress and egress under the Workmen's Compensation Law.

The rule stated in *Matter of Kowalek* v. *N. Y. Cons. R. R. Co.* (229 N. Y. 489, at p. 492) must be accepted, and there it is said: " It is a general rule that if any employee is injured on the premises of the employer in going, with reasonable dispatch and method, to or from actual performance of the specific duties of the employment by a way provided by the employer or reasonably used by the employee, compensation must be awarded. The going to and from the actual work and the risk involved in it are reasonably incidental to the employment."

Further, I am unable to discover any difference in principle between the *Broderick* case and the present case (*Matter of Broderick* v. *Colon & Co.*, 255 N. Y. 609). The injuries to Broderick were sustained at the place of his work in the morning about an hour before his actual working day began. Here the deceased met his death at the place of his employment in the evening about an hour after his actual working day ended. With this difference the only one that I can discover, the *Kowalek* case is an authority for the disposition of this case and it should be concluded that the decedent's death arose out of and in the course of his employment.

For the reasons stated the claim should be dismissed.