IRMA F. WESSELEY, Plaintiff, *v.* TRUSTEES OF THE FIRST GERMAN METHODIST EPISCOPAL CHURCH OF NEW YORK, Defendant.

City Court of New York, Queens County, December 16, 1937.

*Samuel Block* [*James W. Hicks* of counsel], for the plaintiff.

*John J. Kirwan*, for the defendant.

LIVOTI, J.   A motion was made to set aside the verdict in favor of the plaintiff.   The action is for damages for personal injuries alleged to have been sustained by the plaintiff at premises 48 St. Marks place, borough of Manhattan, New York city.   The premises in question consisted of a four-story building.   The first story was occupied as a chapel or church; the second consisted of the living quarters of Dr. Grob, the pastor; the third floor contained three rooms, each occupied at the time by a woman for sleeping only, a kitchen, and quarters for the matron, who did the cooking for the pastor's family; the fourth floor consisted of bedrooms for members of the pastor's family and a study for the pastor.   It was testified to that each of the women came on recommendation and paid three dollars a week for a room.   They would be served breakfast on request, at a small additional charge.   The rooms were set aside for such women whether they were able to pay or not.   If they were able to pay the money would be turned over to the matron for taking care of their rooms.   The matron was the only person who did the cooking on the premises.

It is urged that the motion to set aside the verdict should be granted for the following reasons: *First*, the plaintiff's complaint fails to allege a cause of action; *second*, the plaintiff failed to establish her own freedom from contributory negligence; and, *third*, the premises did not fall within the definition of a " multiple dwelling." The defendant rested at the end of the plaintiff's case.

The first contention that the complaint fails to set forth a cause of action because it does not allege that the defendant's premises were a " tenement house " or a " multiple dwelling " is not well founded.   The complaint alleges in paragraph sixth a violation of section 40 of the Multiple Dwelling Law, and part of that section reads as follows: " In every multiple dwelling the owner shall provide a light or lights   *   *   *   for the vestibule and entrance hall and in every public hall, stair,   *   *   *   on every floor.   *   *   * every such light shall be turned on by the owner or his agent at sunset every day, and shall not be turned off by the owner or his agent until the following sunrise.   Such light or lights shall be kept burning daily from sunset until sunrise."

When plaintiff alleges a violation of section 40 of the Multiple Dwelling Law, he alleges in effect that the premises in question were a " tenement house " or a " multiple dwelling."

The second contention that there was contributory negligence as a matter of law is untenable. It was testified to by the plaintiff, who was seventy-three years of age, that she entered the premises to visit a Miss Barron, the matron of the defendant's establishment. On her entering the building on a cloudy day at six-thirty P. M., there was no light burning in the hallway or over the steps leading to Miss Barron's room. She remained with Miss Barron until seven-fifty P. M. and then left to descend the stairs to the street. At that time there was some light at the top of the stairs emanating from Miss Barron's room, but as she descended, the stairway became darker with each step. When she got half way down, she overstepped because of the absence of light and fell, sustaining injuries. Under such circumstances plaintiff's negligence, if any, was not a question of law but, rather, one of fact for the jury. (*Bornstein* v. *Faden*, 149 App. Div. 37; affd., 208 N. Y. 605; *Brenner* v. *Landsmann Co.*, 181 App. Div. 331; *Silverman* v. *Ulrika Realty Corp.*, 239 id. 194.)

The third contention that the premises were not a "multiple dwelling" is well taken. Unless the premises fall within section 4 of article 1 of the Multiple Dwelling Law, there can be no liability in this case. At common law there was no duty on the landlord to repair rooms demised (*Altz* v. *Leiberson*, 233 N. Y. 16, affg. 191 App. Div. 888), or to provide artificial light (*Lindsley* v. *Stern*, 203 App. Div. 615). A statute imposing a duty on a landlord to keep every part of a dwelling in good repair is in derogation of the common law and must be strictly construed. (*Liddell* v. *Novak*, 246 App. Div. 848.)

It is argued by the plaintiff that the premises in question was a "rooming house" or a "lodging house" as defined in article 1 of the Multiple Dwelling Law by subdivision 7 of section 4. Subdivision 7 reads as follows: "A 'rooming house' or a 'lodging house' is any class B multiple dwelling, other than a hotel in which persons either individually or as families are housed or lodged for hire or otherwise, with or without meals."

Subdivision 5 of section 4 defines a class B multiple dwelling as follows: "A 'class B' multiple dwelling is a multiple dwelling which is occupied, as a rule transiently, as the more or less temporary abode of individuals or families who are lodged with or without meals. This class shall be deemed to include and shall include hotels, lodging houses, rooming houses, boarding houses, boarding schools, furnished-room houses, lodgings, club houses and college and school dormitories."

A "multiple dwelling" is defined by subdivision 3 of section 4, thus: "A 'multiple dwelling' is a dwelling which is either rented,

leased, let or hired out, to be occupied, or is occupied as the abode, residence or home of three or more families living independently of each other. A ' multiple dwelling' shall not be deemed to include a hospital, convent, monastery, asylum or a public institution."

A " family " is defined in subdivision 2 of section 4 as follows: " A ' family' is either a person occupying a dwelling and maintaining a household, with not more than four boarders or lodgers, or two or more persons occupying a dwelling, living together and maintaining a common household with not more than four boarders or lodgers."

Funk & Wagnalls' New Standard Dictionary of the English Language defines " household " as: " A number of persons dwelling under the same roof, and composing a family; by extension, all who are under one domestic head or manager."

A " dwelling " is defined by subdivision 1 of section 4 as follows: " A ' dwelling' is any house or building or portion thereof which is occupied in whole or in part as the home, residence, or sleeping place of one or more human beings."

Upon the facts stated, the premises of the defendant do not come within the purview of the Multiple Dwelling Law. A multiple dwelling must be a dwelling which is either rented, leased, let or hired out as the " abode, residence, or home of three or more families living independently of each other." There were not three or more families living independently of each other. The three women who occupied rooms cannot be considered a " family " because they were not maintaining a household as required by section 4 of the Multiple Dwelling Law. In the case at bar the only one who did the cooking was the matron and there was only one kitchen in the building. The matron cannot be classified as a " family " because she was not " a person occupying a dwelling and maintaining a household." Her status was that of a servant or employee. She was paid a monthly salary.

The building was occupied by one family, the pastor's. The matron was merely a domestic and the three women were roomers or lodgers.

The fact that the three women were roomers or lodgers does not make the building a " rooming house " or " lodging house " because to be such it must be a class B multiple dwelling and a " multiple dwelling " is " a dwelling * * * occupied * * * as the abode, residence or home of three or more families living independently of each other."

In the case of *People* v. *Shkilly* (201 App. Div. 55, at p. 57) the court said: " There was but one kitchen, that of the landlady.

Besides the landlady, three of the families rented rooms for a longer or shorter time and did their cooking at the landlady's fire. There was no cooking in the separate rooms nor any conveniences or appliances therefor. A building is not a ' tenement house ' within the statutory definition unless the occupants live independently of each other. Persons may be said to live in premises when they maintain their family life there. This includes cooking as well as sleeping, and I think they cannot be said to live independently unless they cook in their own apartments as distinguished from a kitchen used in common. The word ' premises,' as used in the act, means the premises, rooms or apartments in which the family lives. It does not change into a tenement house a building conducted as a boarding house because three families living in rented rooms do their cooking in a common kitchen."

The motion to set aside the verdict is granted.