## TEXAS & P. RY. CO. v. WILLIAMS.
### (No. 1783.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 17, 1918. Rehearing Denied Jan. 31, 1918.)

1. COMMERCE  ⚖➡27(8)—RAILROADS—INJURIES TO SERVANTS.

    A fireman on an interstate train, assisting other employés in repairing a waterspout at a tank where his engine must then take water, was within his duties, and an injury while so engaged comes under the federal Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, §§ 8657–8665]).

2. APPEAL AND ERROR  ⚖➡1068(1)—HARMLESS ERROR—INSTRUCTIONS.

    An instruction on comparative negligence, if error, was harmless, where the jury found the injury to a fireman was due solely to the railroad company's negligence and the evidence was insufficient to show contributory negligence.

3. TRIAL  ⚖➡56—RECEPTION OF EVIDENCE—CUMULATIVE.

    Where the issue was whether the depression in the servant's skull was due to a traumatic injury and indicated a fracture, refusal of defendant's offer to produce two men whose heads had similar depressions not due to injury,

---

to corroborate undenied testimony of his witness, was not error.

**4. EVIDENCE ☜132—MATERIALITY—SIMILAR FACTS.**

A prenatal congenital malformation of the skull of one person is not evidence that an abnormal condition somewhat similar in the skull of another is not due to postnatal injury.

**5. APPEAL AND ERROR ☜970(2)—REVIEW—EXCLUSION OF EVIDENCE—DISCRETION.**

The relevancy of testimony as to cranial depressions being the result of injury, as determined by the trial judge, will be disturbed only where it appears that complaining party was deprived of substantial benefit by exclusion of proper testimony.

**6. MASTER AND SERVANT ☜107(1)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES.**

The selection by a railroad pumpman of a rope insufficient for hoisting timbers to repair a waterspout, which rope broke, causing injury to a fireman, was negligence of the company.

**7. APPEAL AND ERROR ☜1064(1)—HARMLESS ERROR — INSTRUCTIONS—WITHDRAWN EVIDENCE.**

A charge on evidence of negligence of master's other servants in handling timbers, resulting in plaintiff's injury, followed by statement that since writing the charge, plaintiff and defendant had agreed that plaintiff was not so injured, if error, was harmless.

**8. DAMAGES ☜132(3)—EXCESSIVE VERDICT—INJURY TO HEAD AND PARALYSIS OF FOOT.**

Where a servant had his skull fractured, resulting in partial paralysis of one foot, a verdict for $12,000, while liberal, is not, as a matter of law, excessive.

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Suit by W. W. Williams against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

F. H. Prendergast, of Marshall, for appellant. S. P. Jones, of Marshall, and T. P. Harte, of Douglas, Ariz., for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for the sum of $12,000 as damages for personal injuries. The facts show that the appellant was operating a line of railroad running from a point in Louisiana into this state, and that the appellee was employed as a fireman on one of its freight trains. He was injured under substantially the following conditions: On December 10, 1914, the train with which the appellee was connected arrived at a small station in Louisiana called New Roads. It was necessary for the engine to take water at that point, and an elevated tank had been placed there by the railroad company for the purpose of supplying its trains with water. On this occasion the spout, or the appliance by which water was conveyed from the tank into the tender of the engine, had been knocked down, and it was necessary to replace it before the tender could be filled. Upon the arrival of the train the appellee and the engineer found Higginbotham, the pumper, and three other men engaged in making the necessary repairs. They were endeavoring, by means of a rope and pulley, to elevate the waterspout into its place. According to the testimony of the appellee he was requested by Higginbotham, and also by the engineer of the locomotive, to assist in the operation; that while Higginbotham and his assistants were holding the waterspout in position by means of the rope the appellee endeavored, under Higginbotham's directions, to push it in place. The timbers slipped off of the gooseneck on which they were resting; the rope with which they were suspended broke, causing the spout to fall and strike the appellee on the back of the head, producing the injuries of which he complains in this suit. He claims that his skull was fractured, and that he ultimately suffered partial paralysis in one of his feet.

[1, 2] In determining the rights of the appellee the trial court applied the doctrine of comparative negligence as authorized by the federal Employers' Liability Act, and gave a charge permitting a recovery by the appellee even if it were found that he was guilty of contributory negligence. That portion of the charge applying the federal statute forms the basis of a ground of assignments of error.

It is conceded that the train with which the appellee was connected was at the time of the injury engaged in interstate commerce; that it was hauling a train of cars from the state of Louisiana into the state of Texas. But it is contended that his employment was that of a fireman; that when he undertook to assist in repairing the water tank he abandoned his authorized employment and voluntarily entered upon another branch of service of the appellant which had no connection with interstate commerce and also was beyond the scope of his employment. Under the laws of Louisiana contributory negligence was a complete defense in suits of this character, and it is insisted that the rights of the plaintiff were governed by those laws. The important inquiry is, Was the appellee, when injured, performing duties within the scope of his employment? If he was, then it follows that he was still engaged in interstate commerce. It is true that under the evidence the appellee had been engaged by the appellant to perform only the duties of a fireman. But does it follow that under all circumstances a fireman is not expected to do something more than merely supply his engine with water and fuel? Emergencies might arise when as a member of a train crew he would be expected to perform a service not literally within the terms of a fireman's contract. For instance, a crew whose duty it is to operate a train is not employed to remove obstructions from the track; but a group of trainmen, upon discovering a small obstruction easily removed, would be expected to perform that service as an incident to the continued operation of their train. On the other hand, should the track become obstructed by a considerable

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

slide of earth from an adjacent embankment requiring days to remove, a train crew would not be expected to undertake that service. Between those extremes there must be found many varying conditions in which the question of duty should be determined as an issue of fact. In this instance the evidence shows that it was a part of the fireman's duty to supply the engine with water, and that it was necessary to take water at that particular place in order that the train might proceed on its journey. Had the fireman, upon reaching the water tank, found some slight derangement about the waterspout which it was necessary to repair and which he could easily have adjusted, it would reasonably be regarded as his duty to make the required adjustments. The extent to which he would be expected to go in such instances must depend upon the facts of each particular case. At the time of the injury appellee was assisting in doing something necessary for the further operation of the train, and which required no extended delay. The jury had a right to conclude that he was performing a service incidental to his principal employment.

In the trial below the court required the jury to find, before returning a verdict for the appellee, that he was acting within the scope of his employment at the time he was injured. But even if this view of the situation be questionable, no harm resulted to the appellant from the giving of that portion of the charge complained of. The court, among other things, instructed the jury as to the form of its verdict should it find that the injury sustained was due solely to the negligence of the appellant, and also as to the form should it find that the injury was partly due to the contributory negligence of the appellee. The form adopted by the jury was that which it was directed to apply in the event it found that the injury was due solely to the negligence of the appellant. This, in effect, was an acquittal of the appellee of any contributory negligence. Moreover, we are strongly of the opinion that the evidence was insufficient to show contributory negligence on the part of the appellee. He was, at the time injured, standing on his engine and endeavoring with an iron bar to push the waterspout into its proper place, and, according to his testimony, was acting under the direction of Higginbotham, whose duty it was to direct the work. There is nothing in the evidence to indicate that the position he assumed was unusually perilous or that prudence required him to occupy a different position.

[3-5] On the trial below the appellee testified that he received a severe blow on the back of his head which fractured his skull. His head was exhibited to the jury, showing a marked depression in the skull at the point where he located the injury. In connection with this he offered the testimony of experts, who stated that the skull had been fractured. To rebut that evidence the appellant produced testimony of an expert who had examined the appellee, and who stated that the skull was not fractured. This expert also testified that the depression upon the appellee's skull was one sometimes found in the heads of normal people. As tending to corroborate that statement the appellant offered in evidence the X-ray pictures of two men whose heads showed similar depressions. It also offered to exhibit the heads of these two men to the jury. This proffered evidence was, on the objection of the appellee, excluded. The bill of exception reserved recites that Dr. Moore, the appellant's expert, testified that he had taken some X-ray pictures of the heads of two persons in normal health living in Marshall who had received no injury to the head—one named S. Wainwright, and the other B. Wainwright—and that these X-ray pictures of the Wainwrights showed a depression on the back of the head of one of them as deep or deeper than the depression in Williams' head, and that the other one showed a depression similar to the depression in Williams' head. Counsel for the appellant explained that he offered the pictures as an X-ray of the head of the man who had no fracture of the skull, but which would show a depression similar to the depression in Williams' head. The only effect this testimony could have would be to corroborate the statement of Dr. Moore, appellant's expert, that the Wainwright brothers had the depressions described, and that was an immaterial issue. The appellant received the full benefit of the statement by Dr. Moore that such a depression could exist from other than traumatic causes, and the exhibitions tendered could not have strengthened the latter's statement. The issue before the court was, not whether the Wainwrights had depressions in their skulls, but whether that in the appellee's skull was due to a traumatic injury and indicated a fracture. It is not insisted that such cranial depressions are normal formations generally, but it is rather to be inferred that they are uncommon and exceptional. A congenital malformation in the skull of one person is no evidence that an abnormal condition somewhat similar in the skull of another is not due to some postnatal cause. The very fact that such a condition is unusual indicates that it is an abnormal one. The relevancy of such testimony must be determined by the trial judge, and his rulings will not be disturbed except where it is made to appear that the complaining party has been deprived of a substantial benefit in the exclusion of the proffered testimony. M. & E. T. Ry. Co. v. Killingsworth, 162 S. W. 1181; 11 Ency. of Evidence, pp. 770—772. Whether or not the exhibits tendered were due to natural conditions depended upon the testimony of Dr. Moore, whose statements might have been disputed, thus introducing a collateral issue. If the appellant

had been accorded the right to offer in evidence the heads of the Wainwright brothers, the appellee could have claimed the right to offer in rebuttal other heads which had no such formations, and might even have offered testimony tending to show that the depressions found in the Wainwrights were not normal conditions, but the result of some violent injuries. This would have resulted in the introduction of a collateral issue calculated to prolong the trial and confuse the jury.

[6] The negligence relied on in this instance as ground of recovery was the selection by Higginbotham of an insufficient rope for hoisting the timbers into place. The evidence shows that when Higginbotham arrived at the water tank for the purpose of making the needed repairs he secured the assistance of three Frenchmen at work near by, and from them procured the rope which they had been using in their work. The insufficiency of the rope was disclosed by the fact that it broke under a weight which Higginbotham might have anticipated would be put upon it. There was also testimony by other witnesses that the rope was too weak to stand the strain to which it was subjected. The court submitted to the jury the question of negligence on the part of Higginbotham in the selection of the rope. He also directed the jury that, in the event they found that at the time he was injured the appellee was not acting within the scope of his employment, to find a verdict in favor of the appellant.

There was some testimony tending to show that the appellee was, prior to the injury, afflicted with another disease, and that this disease was responsible for a part of the injuries of which he complains. We have examined the charge of the court, and think the rights of appellant were properly safeguarded in the instructions given, that the objections to that portion of the main charge are untenable, and further that the special charges upon that issue were properly refused.

[7] It appears from the testimony of the engineer, Deprato, that the appellee was injured, not by reason of the rope breaking, but while he was opening the water valve, and by conduct which might be construed as negligence on the part of the other employés in handling the timbers they were endeavoring to put in place. This testimony was at variance with that of all the other witnesses. Those facts were pleaded, however, and in a portion of the court's charge that ground of negligence was submitted as a basis of recovery. Appellant complains that the evidence did not warrant the submission of that issue to the jury. The closing paragraph of the court's general charge was given apparently for the purpose of withdrawing that issue from the consideration of the jury. The court used this language:

"Since writing the charge it has been agreed by plaintiff and defendant that the plaintiff was not injured while opening the water valve, as testified to by Engineer Deprato."

In view of the record in this case, we think the error, if any, was harmless, because it is exceedingly improbable that the verdict of the jury was founded upon that issue.

[8] Complaint is also made that the damages allowed were excessive. That objection we think is not supported by the evidence. While the allowance was liberal, we cannot say, as a matter of law, that it was more than the appellee was, under the circumstances, entitled to recover.

The judgment of the district court will therefore be affirmed.

1. RELEASE ⊕⇒57(2) — REPRESENTATIONS OF AGENT—EVIDENCE.
 In action by plaintiff section foreman for injuries, evidence on issue of validity of release *held* to authorize finding that physicians, who treated plaintiff, were agents and employés of defendant railroad, authorized to advise plaintiff as to the probability of his recovery from injuries.

2. RELEASE ⊕⇒57(2)—MISREPRESENTATIONS—EVIDENCE.
 In action by plaintiff section foreman for injuries, evidence *held* to authorize finding that representations that plaintiff was well, made by defendant railroad's physicians, were intended to influence plaintiff's action in making settlement with defendant's claim agent and signing a release.

3. RELEASE ⊕⇒17(2)—SETTING ASIDE—RIGHT.
 If the statements of defendant railroad's physicians, who treated plaintiff, were false, and made to induce plaintiff to settle his claim, that the statements were innocently made would not deprive plaintiff of the right to have the release set aside.

4. RELEASE ⊕⇒17(2)—MISREPRESENTATION—"STATEMENTS OF FACT."
 Statement of defendant railroad's physicians, who treated plaintiff, that he "was all right and was well," were "statements of fact," upon which plaintiff foreman had the right to rely in settling his claim and signing a release.
 [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Statement of Fact.]

5. RELEASE ⊕⇒17(2)—MISREPRESENTATIONS—MATTERS KNOWN BY BOTH PARTIES.
 The condition of plaintiff foreman's leg was not a matter equally open to him and defendant railroad's physicians, who had treated plaintiff for two months and made statements as to plaintiff's condition, resulting in signing by plaintiff of release.

6. DAMAGES ⊕⇒132(9)—PERSONAL INJURIES—EXCESSIVE DAMAGE.
 A judgment for $9,877.35, in addition to $110 previously paid, for injuries which will probably necessitate amputation of injured leg, will not be disturbed on the ground that it is excessive, where there is nothing to indicate that the jury was influenced by anything but the testimony.

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes