ERIE RAILROAD COMPANY *v.* SZARY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 355. Argued January 8, 1920.—Decided May 17, 1920.

An employee of a railroad engaged in both interstate and intrastate commerce, whose duty it was to dry sand in stoves in a small structure near the tracks and supply it to the locomotives, whether operating in the one kind of commerce or the other, was injured while returning from an ash-pit whither he had gone to dump ashes taken by him from one of the stoves after sanding several locomotives bound to other States. *Held*, employed in interstate commerce within the meaning of the Federal Employers' Liability Act. P. 89. *Erie R. R. Co.* v. *Collins, ante,* 77, followed.

259 Fed. Rep. 178, affirmed.

THE case is stated in the opinion.

*Mr. Theodore Kiendl, Jr.,* with whom *Mr. William C. Cannon* and *Mr. Coulter D. Young* were on the brief, for petitioner:

Plaintiff's duties as sand-drier, apart from actually delivering sand to an engine, may be divided into (1) preparing the sand for storage, and (2) caring for the stove and fire with which the sand was prepared for storage.

It seems clear that the preparation of the sand for, or placing it in, storage would not constitute interstate commerce. *Cf. Chicago, Burlington & Quincy R. R. Co.* v. *Harrington,* 241 U. S. 177.

If the plaintiff had been placing the dried sand in storage he would have been engaged in the same kind of work as Harrington was, not interstate commerce. But the plaintiff here was even more remote from an act of interstate commerce, for he was, at best, engaged in work which was antecedent to putting engine materials into storage, viz., the work of caring for the fire which prepared the sand for storage. *Cf. Lehigh Valley R. R. Co.* v. *Barlow,* 244 U. S. 183; *Hudson & Manhattan R. R. Co.* v. *Iorio,* 239 Fed. Rep. 855; *Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242 U. S. 353.

As to the other phase of the plaintiff's employment: At the time of his injury he was not even engaged in removing the ashes. But assuming that his act was a part of his cleaning the stove, it did not have to do with any interstate operation. *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.,* 239 U. S. 556.

It would seem that the nearest the plaintiff came to being engaged in interstate commerce at the time of his injury was in removing ashes from a fixture. To paraphrase the language in the *Shanks* opinion, the connection between the fixture and the interstate transportation was remote at best, for the only function of the fixture was to convey heat to sand which was placed in storage and then used in supplying engines, some of which were used in interstate transportation. All this stove was used for was heating and drying of sand as it was moved from storage to storage and such a use cannot be said to make it an instrument of interstate commerce, as the sand which was prepared might never have been used in such commerce. *Delaware, Lackawanna & Western R. R. Co.* v. *Yurkonis,* 238 U. S. 439.

There is no conceivable way in which the plaintiff can be .held to have been employed in interstate commerce unless we are to disregard the decisions in the *Harrington,* *Yurkonis* and *Shanks· Cases.* See also *Illinois Central R. R.* v. *Cousins,* 241 U. S. 641; *Baltimore & Ohio R. R. Co.* v. *Branson,* 242 U. S. 623; *Southern·Ry. Co.* v. *Pitchford,* 253 Fed. Rep. 736; *Giovio* v. *New York Central R. R. Co.,* 176 App. Div. 230; 223 N. Y. 653; *Illinois Central R. R. Co.* v..*Behrens,* 233 U. S. 473; *Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242 U. S. 353; *O'Dell* v. *Southern Ry. Co.,* 248 Fed. Rep. 345.

*Mr. John C. Robinson* for respondent.

Mr. Justice McKenna delivered the opinion of the court.

Action for damages under the Employers' Liability Act, for the loss of a leg in the railroad company's service. The verdict and judgment were for $20,000. The contest in the case is whether the injury was received in interstate or intrastate service.

The judges below concurred in the judgment but disagreed upon the grounds of it. Judges Hand and Hough concurred on the authority of the *Collins Case* (259 Fed. Rep. 172), though Judge Hand did not sit in it, and Judge Hough dissented from its judgment.

As we have just affirmed that case, if it is not distinguishable from the case at bar, the latter must also be affirmed. A distinction is not asserted but both cases are attacked. In our opinion in the *Collins Case, ante,* 77, we have reviewed most of the cases upon which the company relies in this, and whether their principle applies depends upon the facts. We collect them from the testimony and represent them as the jury had a right to consider them, omitting conflicts.

Sand is necessary to an engine and must be used dry. Szary and two others were employed in its preparation, which was done in what is called the "sand house," a small structure standing in the yards of the company along side of the tracks. The drying was done in four large stoves which it was the duty of Szary and his associates to attend. Soft coal was the heating means and the resulting ashes were dumped in an ash pit, to do which a track had to be crossed.

On the night of the accident, January 5, 1917, Szary began his duties at 6 o'clock, and sanded about seven engines whose destinations were other States. He sanded the last engine at 9 o'clock, and after doing so, he removed the ashes from the stove and carried them to the ash pit in a pail according to his custom; in doing which he was compelled to cross one of the tracks. He emptied the pail and left it on the ground while he went to the engine-room to get a drink of water, and when returning for the pail and crossing the track he was hit by an engine. He had looked and saw no engine and heard no signal. He described the night as "very dark and very foggy and rainy and misty," and testified that he could not see anything, the steam and smoke from the engines in all parts of the yard being so thick that he could see nothing.

The engine that hit him was running backwards and without a light. He was picked up and carried to a hospital and his left leg was amputated the same night from two to three inches below the knee.

We think these facts bring the case within the *Collins Case* and the test there deduced from prior decisions. There were attempts there, and there are attempts here, to separate the duty and assign it character by intervals of time, and distinctions between the acts of service. Indeed something is attempted to be made of an omission, or an asserted omission, in the evidence, of the kind of commerce in which the last engine served was engaged.

.The distinctions are too artificial for acceptance. The acts of service were too intimately related and too necessary for the final purpose to be distinguished in legal character.

The conclusion that the service of Szary was rendered in interstate commerce determines the correctness of the ruling of the District Court upon the motion to dismiss made at the close of plaintiff's evidence, and afterwards for particular instructions and the objections to the charge by the court. All of the rulings were based on the character of the commerce, the court adjudging it to be interstate.

It hence follows that the judgment must be and it is

*Affirmed.*

Mr. Justice VanDevanter and Mr. Justice Pitney dissent.