## ROSS, RECEIVER, *v.* GORDON.

[No. 12,339. Filed June 8, 1926. Rehearing denied November 16, 1926. Transfer denied March 29, 1929.]

*H. A. Middleton, Sunkel & Carithers* and *Russell P. Harker,* for appellant.

*Maxwell & McFaddin, Edward H. Knight* and *H. B. Aikman,* for appellee.

REMY, J.—Action by appellee against appellant for damages for personal injuries. At all times mentioned in the complaint, appellant operated a railroad from St. Louis, Missouri, through the town of Cayuga, Indiana, to Toledo, Ohio, and in the operation of the road more than 100 men were employed. Adjacent to Cayuga, appellant maintained and operated, as a part of its railroad equipment, a coal dock for the purpose of coaling its trains, some of which were interstate and some intrastate trains. A short distance west of the dock, a switch left the main track and extended east along the north side of the dock, thus placing the dock between the

switch and the main track, and adjacent to both. The switch track was so constructed that it had a gradual elevation beginning at its junction with the main track, and continuing east past the dock about 150 feet, where cars loaded with coal were regularly placed so that they would be ready for use at the dock when needed. The loaded cars were brought to the storage tracks by men of a switching crew, none of whom had anything to do with the operation of the dock. In the operation of the dock, the cars loaded with coal were moved down the inclined switch track from the place of storage to a point directly over the coal pit, which was a part of the dock. The coal was dumped through the bottoms of the cars upon grating over the pit, through which grating the coal would pass when sufficiently broken with hammers. By machinery, the coal was taken from the pit in buckets, released into a chute, and carried by gravity to the engines to be coaled. Appellee had charge of the dock, and operated the same without assistance. His duties were to bring the loaded cars from the place where they were left by the switching crew to the dock, adjust each car so that it was directly over the grating above the pit, dump the coal from the cars, break the lumps of coal so that it would pass through the grating, and then operate the machinery by which the coal was taken from the pit to the tenders of the locomotives. The dock was of approved design, and consisted of one mechanical unit, which was used, not only in hoisting the coal from the pit, but also in adjusting the loaded cars over the pit. On February 23, 1922, appellee, in the performance of his duty, moved a car loaded with coal a distance of 150 feet west from the storage yard to the dock. The track over which the car was moved was slightly down grade, and, for other reasons which it is not necessary to mention here, the car did not stop at the pit, but ran a short distance farther west. Whereupon, appellee, by use of

the dock machinery, sought to bring the car back to the pit; in doing so, his hands were caught in the machinery and injured. To recover damages for his injuries, appellee instituted this action against appellant. On the trial, the evidence, without conflict, established the above facts. Among the instructions given by the court was one that appellee, at the time of his injury, was not engaged in interstate commerce, within the meaning of the federal Employers' Liability Act (§§8657-8665 U. S. Comp. Stat. 1918). There was a verdict and judgment for appellee.

The only question presented by this appeal which it will be necessary to consider is: Was appellee at the time he received the injuries complained of engaged in interstate commerce, within the meaning of the federal Employers' Liability Act? If the question is answered in the affirmative, the judgment must be reversed.

It is conceded that at the time appellee received his injuries, appellant was a common carrier by railroad and engaged in interstate commerce. The contention of appellee is that the operation by him of the dock machinery in locating the carload of coal over the pit was too remote to constitute an act of interstate traffic. In this view we cannot concur.

The question as to whether an employee of a railroad company which carries on both intrastate and interstate commerce is, by reason of the character of his particular employment, engaged in interstate commerce at the time of an injury, has often been considered by the courts, both state and federal. The courts uniformly hold that the test to be applied in such cases is: "Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it."

*Baltimore, etc., R. Co.* v. *Faust* (1925), 85 Ind. App. 435, 150 N. E. 239, and cases there cited.

In the case of *Erie R. Co.* v. *Collins* (1920), 253 U. S. 77, 64 L. Ed. 790, 40 Sup. Ct. 450, the court approved the rule, and reviewed many of the earlier decisions. In that case, Collins, the employee, was employed to operate a signal tower and a water tank. The tower and tank were located adjacent to each other, each being used in connection with the movement of both intrastate and interstate trains. While starting a gasolene engine to pump water, the employee was injured. It was there conceded that the employee was engaged in interstate commerce while operating the signal tower; but it was earnestly contended that he was not so engaged while operating the pump, it being argued that the pumping of water into a tank, where it was merely stored for future use, was not work so intimately connected with, as to become a part of, interstate commerce. In holding that Collins, while operating the pump, was engaged in interstate commerce, the court used the following language: "It can hardly be contended that while plaintiff was engaged in the signal tower he was not engaged in interstate commerce, though he may have on occasion signaled the approach or departure of intrastate trains. But it is contended that when he descended from the tower and went to the pumping station he put off an interstate character and took on one of intrastate quality or, it may be, was devested of both and sank into undesignated employment. A rather abrupt transition it would seem at first blush, and, if of determining influence, would subject the Employers' Liability Act to rapid changes of application, plaintiff being within it at one point of time and without it at another—within it when on the signal tower, but without it when in the pump house, though in both places being concerned with trains engaged in interstate commerce."

Following the Collins case, and on authority of it, the United States Supreme Court, in *Erie R. Co.* v. *Szary* (1920), 253 U. S. 86, 64 L. Ed. 794, 40 Sup. Ct. 464, held that a railway employee charged with the duty of sanding locomotives used by the company in both interstate and intrastate traffic was engaged in interstate commerce, within the meaning of the federal Employers' Liability Act, when he was injured while carrying ashes from the stoves of the sand house to a nearby ash pit. In the course of the opinion the court said: "We think the facts bring the case within the *Collins Case* and the test there deduced from prior decisions. There were attempts there, and there are attempts here, to separate the duty and assign its character by intervals of time, and distinctions between acts of service. . . . The distinctions are too artificial for acceptance. The acts of service were too intimately related and too necessary for the final purpose to be distinguished in legal character."

But appellee calls our attention to the decision of the United States Supreme Court in *Chicago, etc., R. Co.* v. *Harrington* (1915), 241 U. S. 177, 60 L. Ed. 941, 36 Sup. Ct. 517, and, with much earnestness contends that it governs the case at bar, and in doing so indirectly attacks the decisions of the United States Supreme Court as laid down in the Collins and Szary cases. Of course, if the Harrington case cannot be harmonized with the Collins and Szary cases, this court should follow the holding in the Collins and Szary cases, that being the latest expression of the United States Supreme Court. In our view, the three cases are in harmony, and the Harrington case is distinguishable from the case at bar. In the Harrington case, the coal which was being handled, and which was destined ultimately for use by the railway company in interstate commerce, was being handled by switchmen engaged wholly in intrastate transportation. They were not dock

employees. Their duties were at an end when the cars were delivered at the dock. Gordon, the employee in the instant case, had charge of the dock, was the sole employee thereof. His duties were to place the loaded cars over the pit, unload the coal, and transfer it from the pit to the locomotives, all of which work was done by the same machinery. It would not be contended that the men who were digging the coal and taking it from the nearby mines were engaged in interstate commerce. The Harrington case holds that the switchmen hauling the coal from the mines to the dock were not so engaged. The line must be drawn somewhere. The court, in the Collins case and the Szary case, drew the line around the water station and the sand house, and held that the man who was engaged in doing the things necessary for the operation of those facilities was engaged in interstate commerce. By the same reasoning, we reach the conclusion in the instant case that the line must be drawn about the coal dock, and that, inasmuch as Gordon, at the time of his injury, was performing a service necessarily connected with the operation of the dock, he was engaged in interstate commerce, within the meaning of the federal Employers' Liability Act.

The conclusion we have reached is in harmony with the decisions by many state courts of appeal which have had under consideration questions which were in all material respects the same.

The Iowa Supreme Court, in *Slatinka* v. *United States Ry. Adm.* (1922), 194 Iowa 159, 188 N. W. 20, 24 A. L. R. 608, held that a coal dock employee of a railroad company doing an intrastate and interstate business, was engaged in interstate commerce while in the act of breaking lumps of coal so that they would pass through a grate to the coal pit. In *Kibler* v. *Davis* (1923), 190 Nebr. 837, 192 N. W. 732, it was held that the shoveling of coal into a coal pit of a coal dock was work so closely related to

interstate transportation as to be a part of it, and that the employee so engaged was within the protection of the federal Employers' Liability Act. The Supreme Court of Alabama reached the same conclusion, in a case where the facts were the same, except that the dock employee was moving the coal by means of a cart instead of shovel. *Southern R. Co.* v. *Peters* (1915), 194 Ala. 94, 69 So. 611. A coal dock employee of a railroad carrying on interstate business, and who was injured while waiting for the arrival of a carload of coal which he was to assist in unloading at the dock, was held by the Oregon Supreme Court to be engaged in interstate commerce. *Kamboris* v. *Oregon, etc., R. Co.* (1915), 75 Ore. 358, 146 Pac. 1097. In *Buell* v. *Hines* (1922), 218 Mich. 353, 188 N. W. 422, a coal dock employee of an interstate railway was injured in the railroad yards, and while on his way to the dock to work. The employee was held to be engaged in interstate commerce, and within the protection of the federal statute. It was held by the Illinois Appellate Court that a stationary engineer employed at a coal dock of an interstate railroad was engaged in interstate commerce while at work repairing the dock. *Sells* v. *Grand Trunk, etc., R. Co.* (1917), 206 Ill. App. 45.

Reversed.