NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

## ANGELINE BERRY, PETITIONER, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY, RESPONDENT.

**Accident to Railroad Employe Occurring While the Engine was Standing Without Cars at a Water Plug to Take Water— Question of Employment Being Interstate or Intrastate Commerce Considered at Length and Held That the Actual Employment Here was in Intrastate Commerce.**

On petition for compensation.

This is an action for compensation claimed by the petitioner, Angeline Berry, the widow of Austin Berry, deceased, for the death of the said Austin Berry as a result of an accident which he sustained while in the respondent's employ on September 24th, 1923. By a stipulation entered into at the hearing, liability on the part of the respondent was admitted on all points except as to the question of interstate commerce, so that the only question left for me to determine is as to whether or not the decedent was engaged in intrastate commerce at the time of his accident.

Mr. Berry was employed by the railroad company in the capacity of fireman on a drill engine in its yard at Phillipsburg, New Jersey. At the time that the accident happened, the drill engine had no cars attached to it and was not engaged in moving any cars at that time, but had come to the water plug to take water, and the accident occurred while the engine was stopped at the water plug for this purpose. While the engine stood there, the decedent, while he was engaged in his duties, fell from his engine, and up to the time of the accident no water had been taken by the engine.

It has been well settled for a long time that in a case of this kind the test is as to whether the character of the work which was being done at the very time of the accident was interstate or intrastate. It makes no difference what the

employe had been doing even a few minutes before, and like-wise it is of no consequence what he intended or expected to do in the future. *The test is as to what he was doing at the very time of the accident.* This rule is laid down in the leading case of *Behrens* v. *Illinois Central Railroad Co.*, 233 *U. S.* 473. The same principle was set forth in the more recent case of *Winters* v. *Minneapolis and St. Louis Railway Co.*, 242 *Id.* 353, and in many other cases.

It is undisputed that there were no cars attached to the engine at the time and that it was not engaged in any move-ment of any cars of any kind, but had merely come to the water plug to get water. The occurrence of the accident under these circumstances when the engine was standing still and was not engaged in the movement of any cars at all, necessarily leads to the conclusion that the decedent was en-gaged in intrastate commerce at the time of the accident.

Counsel for the respondent relies mainly on two decisions, one of them the case of *Szary* v. *Erie Railroad Co.*, 253 *U. S.* 86. In this case the employe was engaged in drying sand which was used on both interstate and intrastate locomotives, and at the time he was injured was returning from emptying ashes used for this purpose. Since it was not practicable to divide up the sand into different lots, some of which went into intrastate engines and the other into interstate engines, and since he was undoubtedly drying several lots all at the same time, and since he was necessarily in part, at least, drying sand for interstate locomotives, his work was neces-sarily held to be of an interstate character, because the rule is that if the employe is engaged simultaneously in doing work of an interstate and intrastate character, he is held to be engaged in interstate commerce. But in the case at bar, the engine was not engaged in any work at the time, and, therefore, at the time of the accident, the employment of the decedent was of an intrastate character, exactly as it was in the Winters case above referred to.

The other case relied on by the respondent is that of *North Carolina Railroad Co.* v. *Zachary*, 232 *U. S.* 248, but the facts there are quite different from the instant case, for

456 NEW JERSEY MISCELLANEOUS REPORTS.

N. J. Dept. Labor—Berry v. Central R. R. Co. of N. J.

there the engine was assigned to go out on a definite trip for the purpose of hauling definite cars in interstate traffic, and the work had been done on the engine for that very trip and for that very purpose. In the case at bar, on the contrary, the engine was a mere drill engine and no specific trip had been assigned to it, or, so far as that goes, any other particular work, and no definite cars had been assigned to be hauled by it as far as the evidence shows. The Zachary case therefore clearly did not belong in the class of cases of the Winters case and the case at bar.

After careful consideration, I have come to the conclusion that the case at bar does not fall in the class of cases represented either by the Szary case or the Zachary case, but rather belongs in that class of cases of which the Winters case, above referred to, is typical, namely, where the employe at the time of his injury is engaged in his duties on an engine, which, at the time of the accident, is not engaged in any definite work of an interstate character. In these cases it is well settled by the United States Supreme Court and our state courts that the employe is engaged in intrastate commerce. Such a case is that of *Welsh* v. *Erie Railroad Co.,* 242 *U. S.* 303. The facts in this case are well set forth in the opinion from which I quote (at *p.* 305):

"As to this question, there was testimony tending to show that defendant was a common carrier by rail engaged in commerce between the states, and that plaintiff was, and for some time had been, a yard conductor engaged in night duty at its Brier Hill yard, a mile or more west of Youngstown; that he performed miscellaneous services in the way of shifting cars and breaking up and making up trains, under orders of the yardmaster, and had to apply frequently to the latter for such orders; that when any orders thus given had been performed, or had 'run out,' he usually reported at the yardmaster's office for further orders; that on the night in question plaintiff, with a yard crew, took a freight car loaded with merchandise destined to a point without the state, and a caboose which, so far as appears, was not to go beyond the

limits of the state, from the Brier Hill yard eastwardly to the 'F. D. yard', in Youngstown, where the freight car was placed upon a siding, so that it might be made up into a train by another crew; that they then took the caboose a short distance farther and placed it upon another siding; *that they next took the engine to a water plug and took on water, and then returned with it to the Brier Hill yard;* that on this return journey the engine was slowed down near the yardmaster's office, which is at the easterly end of that yard, so as to enable Welsh to report for further orders, all previous orders having been executed, and that the injury was received while he was attempting to alight for that purpose.

"*It was in evidence, also, that the orders plaintiff would have received had he not been injured on his way to the yardmaster's office would have required him immediately to make up an interstate train.* Upon the strength of this it is argued that his act at the moment of his injury partook of the nature of the work that, but for the accidental interruption, he would have been called upon to perform. *In our opinion, this view is untenable. By the terms of the Employers' Liability act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act.*"

See, also, *Illinois Railroad Co.* v. *Peery,* 242 *U. S.* 292; *Chicago, B. & R. Co.* v. *Harrington,* 241 *Id.* 177; *Lehigh Valley Railroad Co.* v. *Barlow,* 244 *Id.* 183.

This view has been followed by our court in a recent case that is strikingly similar to the case at bar, which, in my opinion, is dispositive of the instant case. This is the case of *Bissett* v. *Lehigh Valley Railroad Co.,* 4 *N. J. Adv. R.* 519. In that case the engine, which was a drill engine, developed pump trouble and was placed upon one of the yard tracks for the purpose of having Bissett make repairs to the pump. While engaged in this work, he fell from the engine and was injured. After the accident his helper finished the

work, and the engine was then placed back in service. The repairs made by Bissett's helper were only temporary. The court held, at page 523, as follows:

"In the present case the Essex County Court of Common Pleas found as a fact 'that at the time of the accident Burt Bissett was engaged in the repair of an engine *wholly separated from any cars not engaged in any commerce, but withdrawn therefrom for repairs. That the engine was not interrupted in any interstate haul.*' In other words, he was not engaged in interstate commerce at the time of the accident.

"We think there is evidence in the case which supports this finding. When the pump trouble developed and the engine could not be used without repairs, *it was detached from all cars and was taken to track No. 1. It certainly was not then engaged in interstate commerce. It was idle and disabled. It had been withdrawn from the use to which it had been put.* It had to be repaired before it could be used again. It was so repaired. During the making of these repairs Bissett was injured."

See, also, *Moran* v. *Central Railroad Co.,* 88 *N. J. L.* 730; *Hanson* v. *New York Central Railroad Co.,* 91 *Id.* 197; *Lawrie* v. *Atlantic City Railroad Co.,* 3 *N. J. Mis. R.* 267.

In the light of these decisions, particularly of that in the Bissett case, I think that it is clear that Mr. Berry was engaged in intrastate commerce at the time of his accident, and that therefore his widow is entitled to compensation.

CHARLES E. CORBIN,
*Deputy Commissioner.*