## LEWIS FRANK BOYER *v.* PENNSYLVANIA RAILROAD COMPANY.

[No. 48, January Term, 1932.]

*Decided April 8th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*T. Alan Goldsborough,* with whom was *W. Brewster Deen* on the brief, for the appellant.

*W. Mason Shehan* and *G. Elbert Marshall,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Lewis F. Boyer, an employee of the Pennsylvania Railroad Company, brought an action at law under the Federal Employers' Liability Act (U. S. C. A., title 45, secs. 51-59) against his employer to recover damages for an injury sustained under circumstances which were alleged in an amended declaration. The *nisi prius* court sustained the demurrer to this declaration, and the appeal is from the judgment on the demurrer in favor of the employer.

The action was based upon the theory that the employer is a railway common carrier engaged in interstate commerce, and that the plaintiff, while employed as its servant in this service, was injured by the negligence of a co-employee. The allegations, whose truth is admitted by the demurrer, but whose legal sufficiency to constitute a cause of action is denied, must show not only that the carrier was engaged in interstate commerce at the time of the accident, but also that the servant was then so engaged. *Roberts on Federal Liabilities of Carriers* (2nd Ed.), sec. 725. It will accordingly be convenient to consider these two divisions of the question on appeal separately and in order.

1. The employer owns and operates an interstate railway whose terminal points are Oxford, Maryland, and Clayton, Delaware. The town of Greensboro, Maryland, is on the railway, and all the defendant's railway trains passing over its tracks through the town are engaged in interstate transportation. The carrier has had along its railway tracks at Greensboro a structure or water tank which, for a period of fifty years, it has maintained and used for the purpose of

furnishing water for these interstate trains. Various connected devices, including the auxiliary power generated by an engine built upon a platform, had been employed to force the water into the tank for delivery to the trains operated in interstate commerce; and in August, 1929, the carrier, in order to make certain operative changes without interruption of the supply of water to the interstate trains, enlarged the existing platform in order to erect thereon another engine which, when ready for use, would supersede the original engine in the production of additional power, when necessary to force sufficient water into the tank to assure regularity in the supply of interstate trains with their requirements of water.

It will be noted that, for a train to be drawn by a steam engine, it is as indispensable to have water in the boiler as fire in the fire box of the engine, and that a water tank to maintain and furnish a continuous and adequate quantity of water for railway trains is a necessary equipment in interstate commerce by a railway carrier. There can, therefore, be no question that the use or maintenance of a water tank for the service of railway trains engaged in the transportation of interstate commerce is, so far as the railway carrier is concerned, an operation in interstate commerce, because, while carriage or transportation is an essential element of commerce between the states, neither can be accomplished without the use of things and the labor of man, which, while so employed, are the instruments and agents of commerce. Consequently, whenever, as in the case of the use or maintenance of a water tank erected for the service of interstate railway trains, employees are engaged in work which is so directly connected with interstate commerce as to be a part of it, they are within the purview of the Federal Employers' Liability Act. *Roberts on Federal Liabilities of Carriers* (2nd Ed.), secs. 725-729, 760-766, 775-777; *Erie R. Co. v. Collins,* 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790; *Erie R. Co. v. Szary,* 253 U. S. 88, 40 S. Ct. 454, 64 L. Ed. 794; the last two cases having been reversed on another point. *Infra.*

A distinction is to be observed where the employment is in the original construction of tracks, tunnels, bridges, structures, and equipment which have never been used as instrumentalities of interstate commerce, because such work is not an employment within the meaning of the statute. The mere fact that the thing, when completed, would be used in direct connection with the transportation of interstate commerce would not be sufficient, since the act contemplates only the liability of a carrier engaged in interstate commerce for injuries sustained by its employees while engaged in such commerce. *Second Employers' Liability Cases,* 223 U. S. 1, 47, 48, 32 S. Ct. 169, 56 L. Ed. 327; *Pederson v. Del., Lack. & West. R. Co.,* 229 U. S. 146, 152, 33 S. Ct. 648, 57 L. Ed. 1125; *New York Cent. R. Co. v. White,* 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667; *Raymond v. Chicago, M. & St. P. R. Co.,* 243 U. S. 43, 37 S. Ct. 268, 61 L. Ed. 583; *Minneapolis & St. L. R. Co. v. Winters,* 242 U. S. 353, 37 S. Ct. 170, 61 L. Ed. 358; *Shanks v. Del., Lack. & West. R. Co.,* 239 U. S. 556, 558, 36 S. Ct. 188, 60 L. Ed. 436; *Del., Lack. & West. R. Co. v. Yurkonis,* 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397; *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; *Lehigh Valley R. Co. v. Barlow,* 244 U. S. 183, 37 S. Ct. 515, 61 L. Ed. 1070.

The employer in the case at bar invokes this distinction between original construction work and the repair or maintenance of interstate railways, and the line of cleavage is not always easily discernible. Whatever may be necessary to keep the subsisting railway, its structures and equipment, in a safe state for interstate traffic, or to maintain it in that state and improve the state, may be said to be an act of repair, which commonly embraces, not only restoration, but ' also renovation or renewal by any process of making good, strengthening, supplying, or mending. *Century Dictionary,* "Repair"; *Inglis v. Buttery,* L. R., 3 App. Cas. 552, 565, 579. In those instances where difficulty arises in determining whether labor or betterment upon an interstate line of railway is new construction work or repair and mainte-

nance, the trend of decisions indicates that the doubt should be resolved in favor of the latter conclusion. *Roberts on Federal Employers' Liability Act* (2nd Ed.), sec. 711.

As has been stated, the allegations of the declaration are to the effect that the carrier was engaged in the replacement of an old auxiliary engine with a new one, and that, in order to prevent any interruption to the use of the water tank in interstate commerce, the existing platform on which the old engine was placed was extended so as to afford a base on which to set the new engine. By this method the old engine was continued in readiness to operate until it would be superseded by the installation of the new one. The water tank was the unit of operation, and the old engine was merely a constituent part of the railway water tank, and so would be the new engine. Neither had, or would have, any independent utility, but each in turn was a necessary mechanical adjunct to prevent a failure in the water supply at the tank for interstate transportation. The enlargement of the base permitted this necessary repair to be made without affecting the operative utility of the water tank in interstate transportation and so had a direct, immediate, and important relation to interstate transportation. Under these circumstances, the changes described were not original construction, but repair and maintenance in a railway structure continuously and exclusively in use as a necessary incident of interstate transportation. *Supra; New York Cent. & H. R. R. Co. v. Carr,* 238 U. S. 260, 264, 35 S. Ct. 780, 59 L. Ed. 1298. Compare *Roberts on Federal Liabilities of Carriers* (2nd Ed.), secs. 785-788; *Erie R. Co. v. Collins,* 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790; *Erie R. Co. v. Szary,* 253 U. S. 88, 40 S. Ct. 454, 64 L. Ed. 794.

The particular work being done upon the water tank, a railway contrivance in service, in order to expedite, further, and facilitate the movement, and contribute to the safety, of interstate etc. transportation, was not for the purpose of erecting a different structure or another equipment for use in the future, but to preserve and keep, on its original location, a subsisting railway instrumentality in constant readi-

ness for its current and immediate use in exclusively inter-state commerce. These attributes and circumstances distinguish this case from many of those relied upon in support of the contention that the work here involved was one of original construction. The decisions are so numerous and conflicting that their statement would be useless and their reconciliation impossible. They have been diligently and laboriouly collected and grouped in section 51 (notes) of title 45 of the United States Code Annotated, and in 10 *A. L. R.* 1184, 14 *A. L. R.* 732, and 24 *A. L. R.* 634. In reaching a conclusion, the decisions of the Supreme Court are of decisive weight, and, in our opinion, indicate the view that is here presented. *Erie R. Co. v. Collins,* 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790; *Erie R. Co. v. Szary,* 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794; *Pederson v. Del., Lack. & West. R. Co.,* 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125.

Repairs: *Lombardo v. Pittsburgh etc. R. Co.,* 91 Pa. Super. Ct. 307; *Wallace v. New York, N. H. & H. R. Co.,* 99 Conn. 404, 121 A. 878; *Pallocco v. Lehigh Valley R. Co.,* 236 N. Y. 110, 140 N. E. 212; *Houston & T. C. R. Co. v. Long* (Tex. Civ. App.), 219 S. W. 212; *Newkirk v. Pryor* (Mo. App.), 183 S. W. 682; *Texas & P. Ry. Co. v. Williams* (Tex. Civ. App.), 200 S. W. 1149; *Chicago, R. I. & G. Ry. Co. v. Bernhard* (Tex. Civ. App.), 275 S. W. 505. *Contra:* *Phillips v. Balto. & O. R. Co.,* 287 Pa. 390, 135 A. 102; *Castonguay v. Grand Trunk R. Co.,* 91 Vt. 371, 100 A. 908; *Phillips v. Chicago & N. W. R. Co.,* 177 Minn. 233, 225 N. W. 106 (reversing same case reported in 173 Minn. 169, 216 N. W. 940); *Seaver v. Payne, Director General,* 198 App. Div. 423, 190 N. Y. S. 724 (affirmed 234 N. Y. 590, 138 N. E. 458, *certiorari* denied *Sever v. Director General,* 261 U. S. 620, 43 S. Ct. 432, 67 L. Ed. 830).

Operation: *Gruszewsky v. Director General,* 96 Conn. 119, 113 A. 160; *Ross v. Gordon,* 89 Ind. App. 63, 152 N. E. 296; *Pallocco v. Lehigh Valley R. Co.,* 236 N. Y. 110, 140 N. E. 212; *Buell v. Hines, Director General,* 218 Mich. 353, 188 N. W. 422; *Armbruster v. Chicago, R. I. & P. R. Co.,* 166 Iowa, 155, 147 N. W. 337; *Roush v. Baltimore & O. R.*

*Co.* (D. C.), 243 Fed. 712, 713; *Kamboris v. Oregon etc. Co.,* 75 Or. 358, 146 P. 1097; *Horton v. Oregon etc. Nav. Co.,* 72 Wash. 503, 130 P. 897, 47 L. R. A. (N. S.) 8. *Contra*: *Smith v. Phila. & Reading Ry.,* 288 Pa. 250, 135 A. 648; *Lindway v. Pennsylvania Co.,* 268 Pa. 491, 112 A. 40; *Southern Pac. Co. v. Industrial Acc. Comm.,* 178 Cal. 20, 171 P. 1071 (but reversed on appeal in 251 U. S. 259, 40 S. Ct. 130, 64 L. Ed. 258); *Zavitovsky v. Chicago, M. & St. P. Ry. Co.,* 161 Wis. 461, 154 N. W. 974.

These decisions and the many available in the references here given illustrate the difficulty of the problem in the instant case. An engine cannot move without a sufficient supply of water, and a carrier's water tank, which is located at the railway track, which is in constant operation, which there accumulates and delivers the water immediately and directly to all engines engaged in interstate transportation and to none other, is plainly an instrumentality used in interstate transportation. While the decisions do not affect the validity of this conclusion, there remains the further inquiry of whether or not the work of repair or maintenance here involved was, under the circumstances, not too remote to be within the meaning of the federal statute.

The latest decisions of the Supreme Court of the United States affirm that the test of whether an employee, at the time of his injury, is engaged in interstate commerce, within the meaning of the act, is "whether he was engaged in interstate transportation or in work so closely related to such transportation as to be practically a part of it." *Chicago & N. W. Ry. Co. v. Bolle,* 284 U. S. 74, 52 S. Ct. 59, 61, 76 L. Ed. 2; *New York, N. H. & H. R. Co. v. Bezue,* 284 U. S. 415, 52 S. Ct. 205, 76 L. Ed. 258.

The work in the case at bar was to enlarge the existing foundation of an auxiliary engine, used to generate power to pump water into the tank, in order to substitute, without interruption of this service, a new engine for a similar purpose. The particular undertaking, therefore, had to do with the installation of machinery whose use was, primarily, to fill, and keep filled, the tank, and not, except indirectly, to

deliver water from the tank to interstate trains, which latter was a subsequent and separate operation. On the authority of *Erie R. Co. v. Collins,* 253 U. S. 77, 40 S. Ct. 450, 64 L. Ed. 790, and *Erie R. Co. v. Szary,* 253 U. S. 86, 40 S. Ct. 454, 64 L. Ed. 794, the employee here, after his relation as employee had begun, would have been held engaged in interstate commerce within the meaning of the federal statute. *Phila., B. & W. R. Co. v. Smith,* 132 Md. 345, 103 A. 945, affirmed *Phila., B. & W. R. Co. v. Smith,* 250 U. S. 101, 39 S. Ct. 396, 63 L. Ed. 869. However, the Supreme Court of the United States, in *Chicago & Eastern Illinois R. Co. v. Industrial Commission of Illinois,* 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 204, was required to accept or reject these decisions, and, upon consideration, overruled them. In this recent case, the employee Thomas was injured in attempting to oil an electric motor while it was running. The railroad was engaged in both intrastate and interstate commerce. The motor furnished power for hoisting coal into a chute to be taken therefrom by, and for the use of, locomotive engines principally employed in the movement of interstate freight. After stating that the contention that the employee was engaged in interstate commerce rested upon the cases of *Erie R. Co. v. Collins,* and *Erie R. Co. v. Szary, supra,* the Supreme Court, in an opinion written by Mr. Justice Sutherland, said:

"In the *Collins* case, the employee, at the time of his injury, was operating a gasoline engine to pump water into a tank for the use of locomotives engaged in both interstate and intrastate commerce. In the *Szary* case the duty of the employee was to dry sand by the application of heat for the use of locomotives operating in both kinds of commerce; and he was so employed when injured. In each case this court held that the employee was engaged in interstate commerce at the time of the injury, within the terms of the Federal Employers' Liability Act (45 U. S. C. A. secs. 51-59).

"The only difference between those cases and this one is that here the work of the employee related to coal, while in the *Collins* case it related to water, and in the *Szary* case, to

sand. Obviously the difference is not one of substance, and, if the *Collins* and *Szary* cases are followed, a reversal of the judgment below would result.

"But in *Chicago, B. & Q. R. Co. v. Harrington,* 241 U. S. 177, 36 S. Ct. 517, 518, 60 L. Ed. 941, the injured employee was engaged in taking coal from storage tracks to bins or chutes for the use of locomotives used in the movement of both interstate and intrastate traffic; and this court held that the service was not in interstate commerce. After quoting the test for determining whether an employee is engaged in interstate commerce, laid down in *Shanks v. Del., Lack. & West. R. Co.,* 239 U. S. 556, 558, 36 S. Ct. 188, 60 L. Ed. 436, 438, namely, 'was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it,' this court said (p. 180 of 241 U. S., 36 S. Ct. 517, 518): 'Manifestly, there was no such close or direct relation to interstate transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use.'

"We are unable to reconcile this decision with the rule deducible from the *Collins* and *Szary* cases, and it becomes our duty to determine which is authoritative. From a reading of the opinion in the *Collins* case, it is apparent that the test of the *Shanks* case was not followed (see page 85 of 253 U. S., 40 S. Ct. 450, 64 L. Ed. 790); the words 'interstate commerce' being inadvertently substituted for the words 'interstate transportation.' The *Szary* case is subject to the same criticism, since it simply followed the *Collins* case. Both cases are out of harmony with the general current of the decisions of this court since the *Shanks* case, *Chicago & N. W. R. Co. v. Bolle,* 284 U. S. 74, 52 S. Ct. 59, 76 L. Ed. 2, decided November 23, 1931, and they are now definitely overruled. The *Harrington* case furnishes the correct rule, and, applying it, the judgment below must be affirmed."

Although the record at bar presents a case where the water was delivered to trains moving in interstate transportation

exclusively, the employment which the plaintiff here was about to begin was even more remotely connected with interstate transportation than those in the *Collins* and *Szary* cases. The labor here was to enlarge an existing foundation, and there would be the intervening stages of the installation of a new engine, and of the generation of power by it to drive a pump, to force, when occasionally required, water into the tank, from which it would be delivered by later and independent operative acts with which the repairman would not be concerned.

It would seem, therefore, that the reasoning and authority of this late exposition of the law and its application would require an affirmance of the judgment on the record in this court, because the work about to be undertaken was too remote in its relation to interstate transportation. *Hines v. Baechtel,* 137 Md. 513, 516-518, 113 A. 126; *Roberts on Federal Liabilities of Carriers* (2nd Ed.), sec. 785.

2. There is, also, another ground for affirmance. The allegations of the declaration with respect to the circumstances under which the accident happened are that the plaintiff was in the employ of the carrier, and, by its direction, was, on August 12th, 1929, being driven by a fellow servant in an automobile, whose ownership is not disclosed, along the public highway from Clayton, Delaware, to Greensboro, Maryland, where the driver of the automobile and the plaintiff, and other fellow servants, were to enlarge the platform on which an engine was placed, in order that another engine might be put thereon in substitution for the first engine. While these two workmen were so traveling, the automobile, through the negligence of its driver, ran into another automobile, turned over and injured the plaintiff.

How many of the miles between Clayton and Greensboro had been traveled before the accident happened on their way to work in the automobile is not stated. It is, however, clear that the accident took place on the public highway before the workman had reached the premises of the defendant. The federal statute, it is true, covers not only employees actually engaged in interstate transportation, but it also embraces

such employees when injured on the carrier's premises while going to and from their work, because, in such cases, they were only there doing what is essential to enable them to discharge their duties as employees engaged in interstate commerce. But when a servant leaves his work for the day and the premises of his employer, and repairs to other pursuits or affairs whence, upon his employer's summons for work in connection with interstate transportation, he proceeds on his way to the place of labor, he is within the protection of the federal act as soon as he comes upon the premises of the railway company, but not until then, unless, it may be, when he is returning in transportation furnished by the employer as a part of his contract of employment. *Kendall Lumber Co. v. State,* 132 Md. 93, 98, 100, 103 A. 141; *Baltimore Car Foundry Co. v. Ruzicka,* 132 Md. 491, 496, 104 A. 167; *Harrison v. Central Construction Co.,* 135 Md. 170, 177-180, 108 A. 874; *Central Construction Corp. v. Harrison,* 137 Md. 256, 262, 263, 112 A. 627; *Miller v. United Rys. etc. Co.,* 161 Md. 404, 157 A. 292.

In the case at bar there is no allegation from which it may be inferred that the transportation in the automobile was furnished by the employer, which is not averred even to have owned or supplied the automobile, or given any direction, or exercised any control over the method of travel or the route to be taken by the employee. It is, however, declared that the automobile was driven by a fellow servant in the particular work which both were similarly to perform on their arrival at their common destination. The inference is that, when the accident occurred on the public road, the occupants were simply going to work as they willed. They were neither on the property nor subject to the control of the employer, nor engaged in any labor which could reasonably be imputed to a task in interstate transportation. As the test is an employment in interstate transportation at the time of the injury, and not at some subsequent time and place, the plaintiff was not engaged within the purview of the federal statute when the casualty befell him. *Supra*: *Roberts on Federal Liability of Carriers* (2nd Ed.), secs. 738, 739, pp. 1393-

1398; *Erie R. Co. v. Winfield,* 244 U. S. 170, 173, 37 S. Ct. 556, 61 L. Ed. 1057; *Balto. & O. R. Co. v. Whitacre,* 124 Md. 411, 427, 92 A. 1060; *Symonski v. Central R. Co. of New Jersey,* 103 N. J. Law, 508, 135 A. 921, affirming 102 N. J. Law, 271, 131 A. 628; *Knorr v. Central Railroad,* 268 Pa. 172, 110 A. 797; *Listorti v. New York Cent. Ry. Co.,* 251 N. Y. 327, 167 N. E. 458; *Aldredge v. Balto. & O. R. Co.* (C. C. A.), 20 Fed. (2nd), 655, *certiorari* denied 275 U. S. 550, 48 S. Ct. 114, 72 L. Ed. 420; *Philadelphia etc. R. Co. v. Tucker,* 35 App. D. C. 123, affirmed in 220 U. S. 608, 31 S. Ct. 725, 55 L. Ed. 607; *Adams v. Hines,* 114 Wash. 672, 196 P. 19.

For the reasons assigned, the judgment must be affirmed.

*Judgment affirmed, with costs.*