ERIE RAILROAD COMPANY *v.* COLLINS.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 348.   Argued January 8, 1920.—Decided May 17, 1920.

Plaintiff's duties on a railroad engaged in interstate and intrastate commerce were to attend to a signal tower and switches and also, in a nearby building, to run a gasoline engine to pump water into a tank for the use of the locomotives, whether operating intrastate or interstate trains. While engaged in the latter employment, he was injured and disfigured by burns resulting from an explosion of gasoline. *Held*, employed, at time of injury, in interstate commerce, within the Federal Employers' Liability Act. P. 82.

Damages may be allowed by a jury for shame and humiliation resulting from an injury and personal disfigurement due to negligence. P. 85

259 Fed. Rep. 172, affirmed.

THE case is stated in the opinion.

*Mr. John W. Ryan*, with whom *Mr. Adelbert Moot* was on the brief, for petitioner:

The character of employment at the time of injury, whether interstate or intrastate, depends upon the work in which the employee, at the time, was engaged. The mere expectation of presently being called upon to perform a task in interstate commerce is immaterial. *Erie R. R. Co. v. Collins*, 259 Fed. Rep. 172; *Southern Ry. Co. v. Puckett*, 244 U. S. 571, 574; *Illinois Central R. R. Co. v. Behrens*, 233 U. S. 473, 478; *Erie R. R. Co. v. Welsh*, 242 U. S. 303, 306. See also *New York Central R. R. Co. v. Winfield*, 244 U. S. 147, 163. As in *Delaware, Lackawanna & Western R. R. Co. v. Yurkonis*, 238 U. S. 439, respondent, at the time of injury, was employed in preparing an article for consumption by the instrumentalities of interstate commerce, and therefore was not employed in such commerce.

If a railroad employed an engineer to pump water from the earth at a distance from its right of way and transported the water by cars or a pipe line to a water tank upon its right of way, for use there upon engines engaged in interstate commerce, we should have a situation exactly like the one presented in the *Yurkonis Case*. The engineer pumping the water has no closer relationship to interstate commerce than the miner has in mining coal for use in interstate commerce. In pumping water, the character of the employment, whether interstate or not, does not depend upon the proximity of the source of supply to the point of use.

In addition to drawing the water from the earth, the engine operated by respondent placed the water in a tank from which it could be taken with convenience, as required for use. This phase of the work was analogous to that done by the injured employee in *Chicago, Burlington & Quincy R. R. Co. v. Harrington*, 241 U. S. 177, who,

when injured, was placing cars of coal on a trestle from which it could be unloaded through chutes to the tenders of . locomotives. See also *Lehigh Valley R. R. Co.* v. *Barlow*, 244 U. S. 183.

It is argued that, without the service which respondent was rendering when injured, commerce would be seriously interrupted, if it did not cease. Commerce would not continue without machine shops for the repair of cars and locomotives, but the courts have held that employment in the shops in which cars and locomotives which hauled interstate commerce were repaired, was not a part of inter- state commerce.· The erection and maintenance of the structures in which the instrumentalities of commerce are built, repaired and housed, the construction and repair of the instrumentalities of commerce, the procurement and placing for convenient use of the articles consumed in commerce, when they have relationship to interstate com- merce are properly classified as work *for* interstate com- merce and not as work *in* interstate commerce. *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.,* 239 U. S. 556. See *Kelly* v. *Pennsylvania R. R. Co.,* 238 Fed. Rep. 95; *Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242 U. S. 353.

*Gallagher* v. *New York Central R. R. Co.,* 180 App. Div. 88; 222 N. Y. 649 (certiorari denied 248 U. S. 655); and *Vollmers* v. *New York Central R. R. Co.,* 180 App. Div. 60; 223 N. Y. 571, indicate that the repair of the pump house in which the gasoline engine was located, or the repair of that engine itself, was not employment in interstate commerce.

On the question of damages for mental suffering, the following were cited: *Southern Pacific Co.* v. *Hetzer,* 135 Fed. Rep. 272; *Kennon* v. *Gilmer,* 131 U. S. 22, 26; *Mc- Dermott* v. *Severe,* 202 U. S. 600, 611.

*Mr. Hamilton Ward,* with whom *Mr. Irving W. Cole* was on the brief, for respondent.

Mr. Justice McKenna delivered the opinion of the court.

Action for damages under the Federal Employers' Liability Act brought in the District Court for the Western District of New York.

The following are the allegations of the complaint stated narratively:

December 25, 1915, and prior thereto, defendant was an operator of a steam railroad and engaged in interstate commerce. On and prior to that date plaintiff as an employee of defendant operated a signalling tower and watertank in the town of Burns, New York, the tower being used for the operation of trains in interstate and intrastate commerce. The tank was used for supplying the locomotives of the trains with water, which was pumped from a close by well into the tank by a gasoline engine which plaintiff ran.

In the nighttime of December 25, 1915, while plaintiff was engaged in starting the engine the gasoline suddenly exploded burning him and seriously and painfully and permanently injuring him, causing him immediate and permanent suffering and the expenditure of large sums of money, by all of which he was damaged in the sum of $25,000.

The engine was defective, which was the cause of the explosion, plaintiff being guilty of no negligence.

Judgment was prayed in the sum of $25,000.

Defendant by demurrer attacked the sufficiency of the complaint and the jurisdiction of the court.

The court (Judge Hazel) overruled the demurrer, and in doing so expressed the conflicting considerations which swayed for and against its strength, but finally held the complaint sufficient, "and that plaintiff was engaged in interstate commerce, or that his work was so closely connected therewith as to be a part of it." To this conclusion

the court seemed to have been determined by *Pedersen v. Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146.

Defendant answered putting at issue the allegations of the complaint, and set up as separate defences assumption of risk and contributory negligence.

A trial was had to a jury during the course of which it was stipulated that at the time of plaintiff's injury and prior thereto "trains carrying interstate commerce ran daily" and at such times "water from the water tank . . . was supplied daily in part to defendant's engines at the time engaged in hauling interstate freight and in part to . . . engines at the time hauling intrastate freight."

Motions for nonsuit and for a directed verdict were successively made and overruled:

The jury returned a verdict for plaintiff in the sum of $15,000 upon which judgment was entered against motion for arrest and new trial.

Error was then prosecuted to the Court of Appeals, which court affirmed the judgment, and to review its action this certiorari was granted.

The evidence presents very few matters of controversy. It establishes the employment of plaintiff by defendant, and its character, and presents the question whether it was in interstate commerce or intrastate commerce, in both of which, it is stipulated, defendant was engaged. And on this question the courts below decided the employment was in interstate commerce though exhibiting some struggle with opposing considerations.

They seemed to have been constrained to that conclusion by the same cases, and a review of them, therefore, is immediately indicated, to see whether in their discord or harmony, whichever exists, a solution can be found for the present controversy.

They all dealt with considerations dependent upon the

distinctions of fact and law between interstate and intra-
state commerce. A distinction, it may at once be said, is
plain enough so far as the essential characteristics of the
commerces are concerned; but how far instruments or
personal actions are connected with either and can be
assigned to either, becomes in cases a matter of difficulty,
and ground, it may be, of divergent judgments. With this
in mind we review the cases.

But first as to the facts in this. Defendant is an inter-
state railroad and upon its line running from other States
to New York it operated in New York a signal tower and
switches to attend which plaintiff was employed. It also
had near the tower a pumping station, consisting of a
water-tank and a gasoline engine for pumping purposes
through which instrumentalities water was supplied to its
engines in whichever commerce engaged. While in at-
tendance at the pumping station plaintiff was injured.
And such is the case, that is, while in attendance at the
pumping station, it being his duty to so attend, was he
injured in interstate commerce?

It can hardly be contended that while plaintiff was
engaged in the signal tower he was not engaged in inter-
state commerce, though he may have on occasion signalled
the approach or departure of intrastate trains. But it is
contended that when he descended from the tower and
went to the pumping station he put off an interstate
character and took on one of intrastate quality or, it may
be, was divested of both and sank into undesignated
employment. A rather abrupt transition it would seem at
first blush, and, if of determining influence, would subject
the Employers' Liability Act to rapid changes of applica-
tion, plaintiff being within it at one point of time and
without it at another—within it when on the signal tower,
but without it when in the pump house, though in both
places being concerned with trains engaged in interstate
commerce.

But let us go from speculation to the cases. *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146; *Delaware, Lackawanna & Western R. R. Co.* v. *Yurkonis*, 238 U. S. 439; *Chicago, Burlington & Quincy R. R. Co.* v. *Harrington*, 241 U. S. 177; *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556, and *Roush* v. *Baltimore & Ohio R. R. Co.*, 243 Fed. Rep. 712, were considered by the Court of Appeals. Some state cases were also referred to.

In *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.*, it was held that one carrying bolts to be used in repairing an interstate railroad and who was injured by an interstate train was entitled to invoke the Employers' Liability Act. In other words, that one employed upon an instrumentality of interstate commerce was employed in interstate commerce. And it was said, citing cases, "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?"

In the *Yurkonis Case* the injury complained of happened to Yurkonis in a mine or colliery of the railroad by the explosion of gases when Yurkonis was engaged in and about the performance of his duties. It was held that an injury so received, though the coal was destined for use in interstate commerce, was not one occurring in such commerce.

In *Roush* v. *Baltimore & Ohio R. R. Co.*, 243 Fed. Rep. 712, the decision was that one employed in operating a pumping station which furnished water to interstate and intrastate roads was engaged in work incidental to interstate commerce. The court deducing that conclusion from cases from which it liberally quoted.

*Chicago, Burlington & Quincy R. R. Co.* v. *Harrington*, 241 U. S. 177, the Court of Appeals considered as substantially the same in incident and principle with the *Yurkonis Case, supra.* The case concerned an injury

while handling coal. It was a step or steps nearer the instrumentality of use. It was being removed when the injury complained of occurred from storage tracks to chutes. The employment was considered too distant from interstate commerce to be a part of it or to have "close or direct relation to interstate transportation." The *Yurkonis Case* was cited and applied.

*Shanks* v. *Delaware, Lackawanna & Western R. R. Co.,* 239 U. S. 556, was considered of like character. The employment asserted to have been in interstate commerce was the taking down and putting up fixtures in a machine shop for repairing interstate locomotives.

Before summarizing these cases we may add *Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242 U. S. 353, and *Southern Ry. Co.* v. *Puckett,* 244 U. S. 571. In the *Winters Case* the work was repairing an engine. The engine, it was said, had no definite destination. "It simply had finished some interstate business and had not yet begun upon any other." As to such instrumentalities the determining principle was said to be that their character depends upon their "employment at the time not upon remote probabilities or upon accidental later events."

In the *Puckett Case* an employee (car inspector) going to the relief of another employee stumbled over some large clinkers in his path while carrying a jack for raising a derailed car. It was decided that he was engaged in interstate commerce, the purpose being to open the way for interstate transportation.

These, then, being the cases, what do they afford in the solution of the case at bar? As we have said regarding the essential character of the two commerces the differences between them are easily recognized and expressed, but, as we have also said, whether at a given time particular instrumentalities or employment may be assigned to one or the other may not be easy, and of this the cases are illustrative. What is their determining principle?

In the *Pedersen Case* it was said that the questions which naturally arise: "Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it"? Or as said in *Shanks* v. *Delaware, Lackawanna & Western R. R. Co., supra,* was the "work so closely related to it [interstate commerce] as to be practically a part of it"? The answer must be in the affirmative. Plaintiff was assigned to duty in the signal tower and in the pump house and it was discharged in both on interstate commerce as well as on intrastate commerce, and there was no interval between the commerces that separated the duty, and it comes therefore within the indicated test. It may be said, however, that this case is concerned exclusively with what was to be done, and was done, at the pump house. This may be true, but his duty there was performed and the instruments and facilities of it were kept in readiness for use and were used on both commerces as was demanded, and the test of the cases satisfied.

There is only one other assertion of error that demands notice. The others (regarding assumption of risk and contributory negligence) counsel neither argue nor submit; their abandonment, therefore, may be assumed.

It is asserted against the verdict that it is "outrageously excessive," caused by the instruction of the court that plaintiff could recover "for shame and humiliation." Counsels' argument is not easy to represent or estimate. They say that "mental pain" of the designated character, "the suffering from injured feelings, is intangible, incapable of test or trial," might vary in individuals, "rests entirely in the belief of the sufferer, and is not susceptible of contradiction or rebuttal." If all that be granted it was for the consideration of the jury. It certainly cannot be pronounced a proposition of law that personal mutilation or disfiguration may be a matter of indifference to anybody

or that sensitiveness to it may vary with "temperaments" and be incapable of measurement. We see no error in the instruction.

*Judgment affirmed.*

MR. JUSTICE VAN DEVANTER and MR. JUSTICE PITNEY dissent.