TIMOTHY J. DESMOND *vs.* BOSTON AND MAINE RAILROAD.

Middlesex. December 7, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Interstate Commerce. Negligence,* Federal employers' liability act.

At the trial of an action by a foreman drawbridge tender against a railroad company under the federal employers' liability act for personal injuries received by the "back firing" of a gasoline engine when, as the plaintiff by direction of his superintendent was instructing an assistant foreman, in charge of another

bridge than that of which the plaintiff had charge, in his work and was engaged in the physical work of starting the engine, which was used to operate the bridge and which the assistant was unable to start, it appeared that both the plaintiff and the assistant foreman, while engaged at their regular duties at the bridges of which they respectively had charge, were engaged in interstate commerce, and the plaintiff testified that his superintendent had "told him to show" the assistant foreman at the other bridge "anything he knew about, including running the engine, also draw work if there should be any." *Held*, that

(1) A finding was warranted that the order to the plaintiff contemplated that he should instruct the assistant foreman at the other bridge through actual participation in the work of starting the engine if the assistant foreman was incapable of starting it or of keeping it in motion when started;

(2) A finding was warranted that, when injured, the plaintiff was engaged in interstate commerce.

TORT, under the federal employers' liability act, 35 U. S. Sts. at Large, 65; 36 U. S. Sts. at Large, 291,* for personal injuries alleged to have been received by the plaintiff while engaged in interstate commerce. Writ dated December 21, 1917.

In the Superior Court, the action was tried before *Dubuque,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. The jury found for the plaintiff in the sum of $20,000; and the defendant alleged exceptions.

*J. M. O'Donoghue,* for the defendant.

*J. H. Vahey,* (*P. Mansfield* with him,) for the plaintiff.

PIERCE, J. This case went to the jury on a single count of a declaration in an action of tort. This count in substance alleged that the defendant on May 7, 1917, was a common carrier by railroad, engaged in interstate commerce; "that on said May 7, 1917, the plaintiff was an employee of the defendant and that while employed by it in interstate commerce he was permanently injured by reason of the negligence of the officers, agents or employees of the defendant in permitting or requiring him to be on duty for a greater period than sixteen consecutive hours, contrary to the act of March 4, 1907, chapter 2939, and the various sections and amendments thereof. . . ."

At the close of the evidence the defendant moved the court to direct a verdict for the defendant and assigned as one of several

---

* This statute in the amended form is published in 219 Mass. at pages 352–355.

alleged grounds therefor "that on all the evidence the plaintiff was not engaged in interstate commerce." The case is before this court solely on the exception of the defendant to the refusal of the trial judge to order a verdict for the defendant for the reason above quoted.

The defendant concedes that the jury warrantably could find that the plaintiff was engaged in interstate commerce while he pursued his usual employment in connection with the operation of the drawbridge No. 8, over the Mystic River.

In connection with his employment at drawbridge 8 the plaintiff testified he performed the following duties: Switching trains that went out of the State as well as local trains; opening and closing the draw of the bridge when vessels came along; operating the gasoline engine which opened the draw; seeing that everything was all right after taking off the draw and putting it back in place. More particularly he testified that "in opening the draw he would start the gasoline engine first, then put the draw in a swinging position, lift her off the abutments about an inch and a half and then swing her off."

He further testified "that he was then doing the same work that he had previously been doing on drawbridge No. 7, except that on drawbridge No. 8 he was the foreman." He further testified that the superintendent Welch requested him "As soon as he got through on his job to go to drawbridge seven and instruct the man who was going to work as a foreman, 'instruct him on anything he didn't know, to stay with him all night' . . . that Mr. Welch told him to show James Regan at bridge seven anything he knew about, including running the engine, also draw work if there should be any."

With respect to what he did previous to the accident he testified "that he then went to drawbridge seven when he finished the work on drawbridge eight; . . . that he stayed at bridge seven all night; . . . that he stayed awake all night May 4; that on the morning of May 5 he went back to his own job and worked all day until about six o'clock or thereabouts that night; that on Saturday night he went home and did not know what time he went to bed; that he worked Sunday on his own job; that he switched trains in and out of the yard all day; that he didn't know as there was anything done on drawbridges that Sunday."

It further appeared that the plaintiff was at drawbridge seven during Sunday night May 6, 1917, and Monday morning May 7, 1917, until the accident, and "that he was expected to return to bridge eight at seven o'clock in the morning of May 7."

He testified "that Sunday nights on bridge seven are kind of quiet nights in regard to shipping and there wasn't anything doing; that there weren't any ships going through on this particular night, so he thought in the morning, having the instructions he did, that he wouldn't leave without doing something for him or helping him out; that he went into the engine room about six-thirty . . . that he was directed to instruct James Regan on the engine and also on the draw work . . . and . . . asked James Regan if he had started the engine and he said 'No.' I asked him if he had tried and he said 'Yes' he had tried several times and didn't succeed in starting it. So I started, at least I started in, I cranked her up. . . . I started to take the bar. . . . I didn't throw it the first time, and didn't get it the second time, I kept on and kept on and I primed her. . . . I pulled her over, I call it, . . . a dozen times or more without any results, and I primed the engine again. . . . I started the handle and cranked again, the first thing I knew I remember getting thrown on something, on the fly wheel or shafting, I cannot tell, I got the senses knocked out of me; the engine back fired."

As has been before stated the only question we have to consider is whether the plaintiff at the time of his injury was engaged in interstate commerce within the meaning of the statute.

Upon the evidence the defendant contends that the plaintiff at the time of the accident was engaged only in instructing another employee in relation to the operation of the drawbridge and that his employment as instructor related to interstate commerce only indirectly through the probable subsequent performance on the part of his pupil of the duties of an interstate employee.

It is conceded that the plaintiff foreman while engaged in his usual employment at drawbridge eight and Regan, assistant foreman, when engaged in a like employment at drawbridge seven was engaged in interstate commerce.

The plaintiff would have continued to be engaged in interstate commerce had he been sent to assist or relieve Regan in the performance of Regan's duties at bridge seven for a longer

or shorter period of time. The contention of the defendant overlooks the fact that the jury on the evidence "that Mr. Welch told him to show James Regan at bridge seven anything he knew about, including running the engine, also draw work if there should be any" might warrantably find that the order to the plaintiff contemplated that the plaintiff should instruct Regan through an actual participation in the work if Regan for any reason was incapable of starting the engine or of keeping it in motion when started.

As regards the question mooted by the defendant whether an instructor of a laborer engaged in interstate commerce is himself engaged in interstate commerce, there may be a possible difference between the status of one who instructs such an employee merely by theory and one who instructs that person by an actual demonstration of the use and capabilities of appliances which are to be used by the employee in the performance of his duties as an interstate employee.

In view of the right of the jury to find that the duties of the plaintiff at least included assistance to Regan in the running of the engine and the movement of the draw, we find it unnecessary to determine the status of the plaintiff in the mere capacity of an instructor in either situation. We think the case is governed by the rule of the decision in *Philadelphia, Baltimore & Washington Railroad* v. *Smith,* 250 U. S. 101. See in this connection *Erie Railroad* v. *Collins,* 253 U. S. 77, and cases cited and considered there.

*Exceptions overruled.*