# FRED PHILLIPS v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

December 16, 1927.

No. 26,364.

**Plaintiff, within meaning of the federal statute, was engaged in interstate commerce.**

> An employe of an interstate railway company is engaged in interstate commerce, within the meaning of the federal employers liability act, while lining up a pipe used in transporting sand from a drying room to a storage tank for use upon locomotives engaged in such commerce.

Commerce, 12 C. J. p. 44 n. 14, 15; p. 45 n. 22; p. 47 n. 31, 37; p. 48 n. 42.

See note in 10 A. L. R. 1191; 14 A. L. R. 732; 24 A. L. R. 635; 29 A. L. R. 1207; 18 R. C. L. 851; 4 R. C. L. Supp. 1217; 5 R. C. L. Supp. 1007.

Action in the district court for Yellow Medicine county to recover for personal injuries. The case was tried before Qvale, J. who at the close of plaintiff's case directed a dismissal. From an order denying his motion for a new trial and from a judgment of dismissal, plaintiff appealed. Reversed.

*Miner & McDonald,* for appellant.

*Brown, Somsen & Sawyer* and *J. N. Johnson,* for respondent.

QUINN, J.

Defendant is an interstate carrier operating a line of railroad extending from Chicago across the states of Illinois, Iowa and to Omaha, Nebraska. At Fulton, Illinois, it maintains, in connection with the operation of its road, machine shops, a roundhouse, sand house and a sand storage tank. The sand house is a structure about 24 x 24 feet in size and about 20 feet high. The storage tank is

[1]Reported in 216 N. W. 940.

about 10 feet in diameter, elevated about 40 feet above the surface of the ground, and located about 100 feet distant from the sand house between the tracks leading to and from the roundhouse, so that a locomotive on its way to or from the latter place may take sand, which is accomplished by stopping at the tank, adjusting a spout and pulling a chain.

The sand house contains a drying stove, a screen, drum and a bunk for holding the sand, which together constitute the sand dry-ing apparatus. Prior to October 6, 1925, a four-inch metallic pipe extended from the drum inside the sand house down into the ground about three feet and then, by means of an elbow, about 12 feet horizontally underground and then, by means of another elbow, diagonally about 100 feet to the top of the storage tank. This pipe weighed about 25 pounds per lineal foot. There were six bents be-tween the sand house and the storage tank, made of 6 x 8 timbers with a 12 x 12 timber as a base and a cap at the top on which the pipe rested. There was a telegraph pole set in the ground midway between these bents to which the pipe was securely fastened, form-ing an anchor for the pipe and bents.

On the day referred to defendant commenced making certain alter-ations and repairs to the apparatus. The bunk was removed and a new one installed, and the pipe was changed so as to extend from the drum directly up through the roof, thence, by use of an elbow, diagonally to the top of the storage tank. This change made neces-sary an alignment of the pipe and the bents, varying from approxi-mately three feet at the sand house to three or four inches at the storage tank. Nearly two days time was consumed in making the change, during which the apparatus was not used. Before the work was begun the tank was filled and the pipe was disconnected from the drum, but was left intact at the tank. No new pipe or elbows were used, nor was any of the old pipe removed from the top of the bents.

The work of moving the bents was done by a bridge crew. Appellant took no part in that work. He was a metal worker. The pipe was first disconnected from the drum. The poles were severed

at the surface of the ground and the bents were then pried over little by little with a bar until the pipe projecting through the roof was nearly in line with the pipe resting on the bents, and it was only necessary to line up and connect the pipes at the elbow at the top of the roof when the job would be complete. At this stage of the work plaintiff was on top of the bents, assisting in the alignment and coupling, when one of the bents fell and the entire structure collapsed and went to the ground, carrying appellant with it and injuring him severely. At the close of the plaintiff's evidence the court directed a dismissal, and he appealed from an order denying his motion for a new trial and from a judgment of dismissal.

The apparatus, including the pipe, was used in drying, screening and transferring sand from the sand house into the tank for use on locomotives engaged in both interstate and intrastate commerce. The sand was forced through the pipe by air pressure. The friction caused leakage at the elbows underground, which allowed the sand passing through the pipe to become damp. To overcome this trouble was one of the purposes of the change. While the line of demarcation between repair work on the one hand and construction work on the other is not always easily discernible, yet we are of the opinion that the work in question was that of overhauling and repairing. The change in the pipe was for the purpose of preventing leakage at the elbows underneath the ground and avoiding dampness to the sand. The sand was necessary for use on the locomotives and had to be used dry. It is clear that the pipe upon which appellant was engaged was a part of defendant's interstate equipment, an instrumentality for conveying sand, after it had been dried and screened, from the drying plant to the tank for use on the locomotives. No other means of conveyance was afforded. At the time of his injury plaintiff was engaged in the repair of this instrumentality. A new drum had been installed in the drying room and the pipe had been connected therewith and extended up through the roof. There was an elbow at the upper end of this pipe which was to be coupled with the pipe on top of the bents. To accomplish this feat was the purpose of the alignment upon which plaintiff was engaged at the time of the accident.

It is urged that, under the circumstances as shown by the evidence, the question whether appellant's engagement and work was interstate at the time of his injury was for the jury under the rule announced in Erie R. Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. ed. 790, and Erie R. Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. ed. 794; while it is just as strongly insisted on behalf of the respondent that it conclusively appears that appellant was not so engaged under the holding in C. B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. ed. 941, and Shanks v. Delaware, L. & W. R. Co. 239 U. S. 556, 36 S. Ct. 188, 60 L. ed. 436, L. R. A. 1916C, 797.

The appellant was not engaged in operating any of the sand-supplying machinery, nor in the repair of any such machinery, yet he was engaged in repairing an instrumentality used in transporting sand to the tank. The tank was an integral part of an interstate commerce highway and was in actual use as such at the time in question. The work of overhauling and repairing in no way interrupted the use of the tank. It only interfered with the means of supplying the tank with sand. While the apparatus, including the pipe, was no part of the highway and was not used directly in sanding locomotives, yet its use was so closely related thereto and to such commerce as to become a part thereof within the meaning of the federal employers liability act and brings the case within the Collins and Szary cases.

An important question here is: What relationship did the work which appellant was doing bear to the operation of the respondent's interstate trains? At the time the work of overhauling was commenced, the tank was filled with sand for the purpose of supplying the locomotives for two days while the apparatus was out of commission, clearly indicating that the pipe, when repaired and lined up, was to be immediately placed in service in transporting sand for use on respondent's interstate trains. It is well settled that the doing of work which has for its immediate purpose the furtherance of interstate commerce constitutes an employment in such commerce within the meaning of the federal act. N. Y. C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. ed. 1299; L. & N. R. Co. v.

Parker, 242 U. S. 13, 37 S. Ct. 4, 61 L. ed. 119; Pecos & N. T. Ry. Co. v. Rosenbloom, 240 U. S. 439, 36 S. Ct. 390, 60 L. ed. 730; So. Ry. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. ed. 1321, Ann. Cas. 1918B, 69.

In a case of this character it is not so important whether the work of the injured employe was construction work or repair work, but rather what relationship it had to the operation of interstate trains. If such work had for its immediate purpose the furthering of interstate commerce, then it constitutes an engagement within the meaning of the federal act. In Roush v. B. & O. R. Co. (D. C.) 243 F. 712, the employe was engaged in operating a pumping station which furnished water to interstate and intrastate trains, and it was held that he was engaged in work incidental to interstate commerce. In the Collins case, 253 U. S. 77, 40 S. Ct. 450, 64 L. ed. 790, the defendant was an interstate carrier and it maintained and operated a pumping station consisting of a water tank and a gasolene engine for pumping purposes by which water was supplied to its locomotives engaged in such commerce. While engaged at the pumping station the employe was injured. Though the employe worked in the signal tower as well, yet the decision was upon what was to be done and what was done at the pump house, and the service was held to come within the act. In the Szary case, 253 U. S. 86, 40 S. Ct. 454, 64 L. ed. 794, the employe was engaged in preparing sand in a drying house similar to the one in the instant case. Ashes accumulated and it was his duty to dump them in a pit across a track, which he did. On his way back after dumping a pail of ashes he was hit by an engine, and it was held that he was within the act.

In arriving at the conclusion which we do, we have not been unmindful of the holding in the Shanks case, 239 U. S. 556, 36 S. Ct. 188, 60 L. ed. 436, L. R. A. 1916C, 797. When there is an issue as to whether the particular engagement is so closely connected with the commerce as to become a part of it, that question must be decided in the light of the facts in the particular case. N. Y. C. & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. ed. 1298; Pedersen v.

Delaware, L. & W. R. Co. 229 U. S. 146, 33 S. Ct. 648, 57 L. ed. 1125, Ann. Cas. 1914C, 153. In the Shanks case the employe was altering the location of a fixture in a machine shop. The function of the fixture was to communicate power to machinery used in repairing parts of locomotives, some of which were used in interstate traffic. The fixture was remote because it was not to be used in connection with interstate movements. In the instant case, the pipe is used directly in supplying sand for the locomotives.

We are of the opinion that the work in which appellant was engaged at the time of the accident was so closely related to the commerce in which respondent was engaged as to be considered a part thereof and bring the case within the federal act.

Reversed.

HOLT, J. (dissenting).

I am not fully satisfied that a substantial difference exists between the instant case and the Shanks case.