# FRED PHILLIPS v. CHICAGO & NORTHWESTERN RAILWAY COMPANY.[1]

April 19, 1929.

No. 27,138.

*Brown, Somsen & Sawyer, Richard L. Kennedy, William T. Faricy* and *Paul J. McGough,* for appellant.

*Robert J. McDonald,* for respondent.

TAYLOR, C.

Action under the federal employers liability act to recover for personal injuries sustained by plaintiff while in the employ of defendant at Fulton in the state of Illinois. This is the second trial. At the conclusion of the first trial the action was dismissed by the trial court on the ground that plaintiff was not engaged in interstate

[1]Reported in 225 N. W. 106.

commerce and was within the workmen's compensation act of the state of Illinois. On appeal this court granted a new trial. Phillips v. C. & N. W. Ry. Co. 173 Minn. 169, 216 N. W. 940. The second trial resulted in a verdict for plaintiff. Defendant appealed from an order denying in toto its motion in the alternative for a dismissal of the action, for judgment notwithstanding the verdict, or for a new trial.

Before answering defendant appeared specially and moved to set aside the service of the summons, asserting among other things that requiring defendant to defend the action in this state imposed an undue and an unreasonable burden on interstate commerce. The motion was overruled. Defendant has preserved its rights thereunder and asserts here that the court was without jurisdiction to entertain the action, although recognizing that the question has been decided against it by this court in several previous cases. Erving v. C. & N. W. Ry. Co. 171 Minn. 87, 214 N. W. 12; Kobbe v. C. & N. W. Ry. Co. 173 Minn. 79, 216 N. W. 543; Gegere v. C. & N. W. Ry. Co. 175 Minn. 96, 220 N. W. 429. The ultimate decision rests with the federal supreme court, but until that court speaks we adhere to our former ruling.

That plaintiff sustained severe injuries while in the employ of defendant and that the evidence is sufficient to make the question of defendant's negligence a question for the jury is conceded, but defendant contends that plaintiff was not engaged in interstate commerce and therefore is not within the federal employers liability act and cannot maintain an action based thereon. Defendant urges that the decision on the former appeal does not preclude an examination and determination of that question on this appeal for the reason that the rule of "the law of the case" does not apply where the decision of this court is reviewable by the federal supreme court, and for the further reason that the evidence bearing upon that question at the present trial was more complete and definite than at the former trial.

After the case was remanded both parties amended their pleadings. The evidence at the new trial removes any uncertainty as

to the character of the work which plaintiff was employed to do and was doing at the time of the accident. Whether that work was a part of interstate commerce within the meaning of the federal statute is the important question. On the former appeal it was held, one justice dissenting, to be so closely related to such commerce as to bring it within the statute; but as the question involves the interpretation of a federal statute, upon which our decision is not final but is reviewable by the federal supreme court, the doctrine of the law of the case does not preclude a re-examination of the question. Sands v. American Ry. Exp. Co. 159 Minn. 25, 198 N. W. 402; L. & N. R. Co. v. State, 107 Miss. 597, 65 So. 881; L. & N. R. Co. v. Rhoda, 73 Fla. 12, 74 So. 19.

The facts are undisputed. At Fulton, Illinois, a freight division point, defendant maintains a machine shop, a roundhouse, a sand house and a sand storage tank. The sand storage tank, from which sand is supplied to locomotives, is elevated about 40 feet above the tracks. The sand is dried and screened in the sand house distant 100 feet or more and is then forced by air pressure through a four-inch iron pipe to the tank. As originally constructed this pipe passed out of the sand house underground and then extended upward in a slanting direction to the tank. It was supported by a number of timber frames termed "bents." At times it operated so unsatisfactorily that the necessary sand was supplied to locomotives by carrying it in pails from the sand house.

Defendant installed some new machinery in the sand house, and on the day preceding the accident disconnected the pipe and then proceeded to relocate it so that it would pass from the sand house through the roof and from that point to the tank. To make this change it was necessary to move the supporting "bents," which was done by a bridge crew. Plaintiff was a sheet metal worker's helper and took no part in moving the "bents" but assisted in aligning and reconnecting the pipe. While he was on the top of one of the "bents" engaged in this work the "bent" fell, and he sustained the injuries for which he seeks to recover.

It is our duty to apply a federal statute as interpreted and applied by the federal supreme court, and we shall re-examine the case for the purpose of determining whether plaintiff was engaged in interstate commerce within the meaning of the statute as interpreted and applied in the decisions of that court.

In Shanks v. D. L. & W. R. Co. 239 U. S. 556, 36 S. Ct. 188, 60 L. ed. 436, L. R. A. 1916C, 797, that court reviewed its prior decisions and deduced therefrom that [239 U. S. 558]:

"The true test of employment in such commerce in the sense intended is, Was the employee, at the time of the injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?"

This test has been consistently recognized and applied in the subsequent cases; but, as said by the federal court, while the test is simple and easily expressed, it may be difficult to determine whether a particular employment at a particular time is in interstate or intrastate commerce. Shanks was employed in a machine shop and was usually engaged in repairing locomotives used in both interstate and intrastate commerce; but on the day of the injury was engaged in changing the location of a countershaft through which power was transmitted to machinery used in the repair work. The court said [239 U. S. 559]:

"It is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car, or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the Yurkonis case, was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the Employers' Liability Act."

In C. B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. ed. 941, Harrington was a switchman in the company's yards at Kansas City in which interstate trains were handled. At the time of the injury he was engaged in switching carloads of coal belonging to the company from a storage track to the chutes in which it was to be placed to be supplied to engines as needed by them. The court said [241 U. S. 180]:

"His immediate duty * * * was solely in connection with the removal of the coal from the storage tracks to the coal shed, or chutes, and the only ground for invoking the Federal Act is that the coal thus placed was to be used by locomotives in interstate hauls."

After pointing out the test as stated in the Shanks case the court continued [241 U. S. 180]:

"Manifestly, there was no such close or direct relation to interstate transportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use."

Erie R. Co. v. Collins, 253 U. S. 77, 40 S. Ct. 450, 64 L. ed. 790, and Erie R. Co. v. Szary, 253 U. S. 86, 40 S. Ct. 454, 64 L. ed. 794, are the cases upon which plaintiff relies. They were decided at the same time, two of the justices dissenting in each. In the Collins case, Collins was employed to attend a signal tower and switches and also to attend a pumping station near the tower in which water to be used by engines was pumped into a tank by a gasolene engine. He was injured while starting the gasolene engine. The court said [253 U. S. 82]:

"It can hardly be contended that while plaintiff was engaged in the signal tower he was not engaged in interstate commerce, * * *. But it is contended that when he descended from the tower and went to the pumping station he put off an interstate character and took on one of intrastate quality *. * *. A rather abrupt transition it would seem at first blush, and, if of determining influence, would subject the Employers' Liability Act to rapid changes of applica-

tion, plaintiff being within it at one point of time and without it at another—within it when on the signal tower, but without it when in the pump house, though in both places being concerned with trains engaged in interstate commerce."

After reviewing the cases and quoting the test stated in the Shanks case, the court said [253 U. S. 85]:

"Plaintiff was assigned to duty in the signal tower and in the pump house and it was discharged in both on interstate commerce as well as on intrastate commerce, and there was no interval between the commerces that separated the duty, and it comes therefore within the indicated test. It may be said, however, that this case is concerned exclusively with what was to be done, and was done, at the pump house. This may be true, but his duty there was performed and the instruments and facilities of it were kept in readiness for use and were used on both commerces as were demanded, and the test of the cases satisfied."

In the Szary case, Szary was employed in a sand house to dry sand and supply it to engines. He carried ashes from the drying stoves to a pit where he dumped them and was injured on his way back. It was held that the facts brought the case within the Collins case, 253 U. S. 77, 40 S. Ct. 450, 64 L. ed. 790. He had sanded seven interstate engines, but it was urged that there was a failure to show in what commerce the last engine served was engaged. The court said [253 U. S. 90]:

"The distinctions are too artificial for acceptance. The acts of service were too intimately related and too necessary for the final purpose to be distinguished, in legal character."

In Industrial Acc. Comm. v. Davis, 259 U. S. 182, 42 S. Ct. 489, 66 L. ed. 888, the court stated as the test [259 U. S. 185]:

"Was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"

Burton, the injured employe, was engaged in repairing an engine which had been used in interstate commerce and was to be so used

again, but was then undergoing extensive repairs and had been in the machine shop about two months. The court distinguished between the making of temporary repairs to permit an instrumentality to continue in use and the making of repairs to refit an instrumentality after it had been withdrawn from use for that purpose, and held that the employe was not within the act.

In B. & O. S. W. R. Co. v. Burtch, 263 U. S. 540, 44 S. Ct. 165, 68 L. ed. 433, Burtch was injured while assisting in unloading a heavy machine from an interstate train. The court quoted the test from the Shanks case and said [263 U. S. 544]:

"It is too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it."

We have cited the above cases in the order in which they were decided. It appears from them that an employe who is unloading interstate freight, or who is supplying sand to interstate engines, or who, in addition to his duties as a signalman, operates a pumping plant to supply interstate engines with water, is engaged in work so closely related to interstate transportation as to bring him within the federal act; but that an employe who is repairing an interstate engine withdrawn from use for that purpose, or who is moving coal to a chute from which others are to supply it to interstate engines, or who is changing the location of machinery used in repairing interstate engines, are engaged in work too remote from actual transportation to bring him within that act. To be within the act it would seem that the employe must at the time be directly engaged in interstate transportation, or in keeping in usable condition instrumentalities in use in such transportation, or in supplying to such instrumentalities while so in use something needed to enable them properly to perform their part in such transportation.

Plaintiff never had anything to do with the operation of the machinery for preparing and supplying sand and had never supplied sand either to the sand tank or to engines. He was a sheet metal worker and as such was engaged in realigning and reconnecting the

iron pipe previously used to convey sand to the tank and intended to be again used for that purpose when the changes were completed. We have reached the conclusion that he is within the rule of the Shanks and Harrington cases and not that of the Collins and Szary cases; that his work was nothing more than putting the pipe in condition to be used by others for the purpose of putting sand "in a convenient place from which it could be taken as required for use;" and that the work was not "so closely related to interstate transportation as to be practically a part of it."

The order is reversed and judgment will be entered for defendant.