## SPRY v. NORFOLK & W. RY. CO.
### No. 3136.

Circuit Court of Appeals, Fourth Circuit.
June 17, 1931.

W. H. D. Preece, of Williamson, W. Va., for appellant.

F. M. Rivinus, of Roanoke, Va., Goodykoontz & Slaven, of Williamson, W. Va., and Holt & Holt, of Huntington, W. Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The administrator of Andrew Spry brought an action at law against the Norfolk & Western Railway Company in the circuit court of Mingo county, W. Va., alleging that the death of the deceased was caused by the wrongful act of the railway company in failing to provide a safe place for him to work while engaged as its employee in its colliery or mine in Mingo county, W. Va. It was charged that the roof of the mine was so carelessly supported that on February 4, 1928, it fell upon Spry and inflicted injuries from which he died. On motion of the defendant, the case was removed to the District Court of the United States for the Southern District of West Virginia on the ground of diverse citizenship. The plaintiff moved to remand the case, claiming that it was a suit based upon the Federal Employers' Liability Act (45 USCA §§ 51–59), and, under the terms of that statute (sections 1 and 6 [45 USCA §§ 51, 56]), could not be removed; but the District Court concluded that the decedent was not engaged in interstate commerce at the time of his accidental injury, and that the Federal Employers' Liability Act therefore had no application. Thereupon the defendant, in addition to a general issue plea, filed a special plea in which, amongst other things, it was alleged that the coal mined by the plaintiff was intended to be used by the railway company in its business of transportation in intrastate and interstate commerce. The plaintiff replied generally to this special plea, and, a jury trial being waived, the issue raised was submitted to the court upon a stipulation of fact.

Therein it appeared that, at the time of the fatal injury, the railway company was the owner and operator of the Howard Mine or Colliery, and that the tipple of the mine was connected with the main line of the railway by a spur track; that the railway company, through the employees of its fuel department, mined and loaded coal exclusively for its fuel purposes, and not for sale or transportation as an article of commerce; that the miners engaged in the mine were confined exclusively to mining coal, and had nothing to do with the work of transportation of the railway company; that Spry at the time of his death was an employee of the fuel department, engaged exclusively in loading coal into a mine car on tracks leading out of the mine to the tipple; and that, while so engaged, he met with the fatal injury described in the complaint.

The stipulation further showed that the railway company, through its fuel department, prior to the accident, had complied with the Workmen's Compensation Act of West Virginia (now codified in chapter 23 of the Official Code of West Virginia 1931 [23-1-1 to 23-5-1]) by paying into the Workmen's Compensation Fund of the state the premiums required by the act, and had also given notice to its employees, in the manner required by law, that it had taken advantage of the act; and that, subsequent to the employee's death, his administrator had made application to the commissioner of the act, and had received certain payments in compensation for the injury. Upon this state of facts, the court, having found that the de-

ceased was not engaged in interstate commerce at the time of his accident, concluded that the action of the plaintiff was barred by the terms of the Workmen's Compensation Act which provide (Official Code of West Virginia 1931, 23-2-6) that any employer subject thereto shall not be liable to respond in damages at common law or by statute for the injury or death of any employee. The court therefore found a verdict and judgment for the defendant.

It is apparent from this recital of the facts, as the appellant before us conceded, that the sole question which determines the whole case is whether, at the time of the injury, the deceased was engaged in interstate commerce. If he was so engaged, the case should have been remanded to the state court for trial; but, if he was not, the District Court was right in retaining jurisdiction and in finding a judgment for the company. In deciding a similar question under the Federal Employers' Liability Act, the Supreme Court of the United States has said that "the Federal act speaks of interstate commerce in a practical sense suited to the occasion, and 'the true test of employment in such commerce in the sense intended is, Was the employee at the time of the injury engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?'" Chicago, Burlington & Q. R. R. v. Harrington, 241 U. S. 177, 180, 36 S. Ct. 517, 518, 60 L. Ed. 941. See, also, Erie R. R. v. Collins, 253 U. S. 77, 85, 40 S. Ct. 450, 64 L. Ed. 790; Metzger v. Western Maryland Ry. Co. (C. C. A.) 30 F.(2d) 50. And that court has applied the law to the facts in two cases so similar to the case at bar as to leave no doubt in our minds that the decision of the District Court was right. In Delaware, Lack. & West. R. R. v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397, an employee was injured while preparing and setting off a charge of dynamite in a colliery owned and operated by the railroad company in order to blast out coal to use in its conduct of interstate commerce. In Chicago, Burlington & Q. R. R. v. Harrington, supra, the injured employee was a member of a switching crew of the railroad which did not work outside the state and was engaged at the time of the accident in removing coal belonging to the railroad company from storage tracks where it had been standing for some time to a coal shed where it was to be placed in bins and supplied as needed to locomotives, some of which were engaged in interstate and others in intrastate traffic. In both cases the court concluded that there

was no such close or direct relation to interstate transportation as to make the work of the employee a part of it, and held that the Federal Employers' Liability Act did not apply. The mere fact that the coal might be used, or was intended to be used, in the conduct of interstate commerce, did not make the injury one received by the employee while engaged in interstate commerce.

The same observations clearly apply to the character of the employment of the deceased in the case at bar, and the judgment of the District Court is therefore affirmed.